**Steven R. MACK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 482S163.**

Supreme Court of Indiana.

Dec. 22, 1983.

James W. Skinner, Portage, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Steven R. Mack, defendant-appellant, was convicted by a Porter County jury of two counts of dealing in marijuana in excess of thirty grams, a class D felony, Ind.Code § 35–48–4–10, and was found to be an habitual offender, Ind.Code § 35–50–2–8. The trial judge imposed two concurrent two year terms of imprisonment for the dealing offenses and enhanced that sentence by thirty years because of the habitual offender finding. In his direct appeal, defendant raises these issues:

(1) Whether he was denied his constitutional rights because of the process used to select a jury panel.

(2) Whether the trial court erred by refusing to give defendant's tendered final instruction on the issue of entrapment.

(3) Whether there was insufficient evidence to show defendant's predisposition to commit these dealing crimes and to support the verdict.

(4) Whether the habitual offender finding was contrary to law and not supported by sufficient evidence.

I.

Defendant first argues that he was denied his right under the Sixth and Fourteenth Amendments to the United States Constitution to a trial by a fair cross-section of the community because of the procedure employed in Porter County of selecting jurors solely from real estate property tax schedules. He claims that this procedure resulted in the under-representation of those persons who did not own real property, especially the group of eighteen to twenty-four year olds, and thus produced a jury not fairly representative of the community. Defendant's pre-trial motion to dismiss the jury panel and venire was denied on the first day of trial.

We first note that while defendant offered into evidence factual material which formed the basis for his allegations pursuant to a stipulation with the State, and the trial court granted his motion to incorporate this transcript and documentation, this material is not included in the record on appeal. There is no evidence in the appellate record which shows how the jury venire was selected or whether there was any numerical disparity between the group of eighteen to twenty-four year olds living in the community and those selected for service on Porter County jury panels. Assertions of error not disclosed by the record are not available for review by this Court. *Daniels v. State*, (1980) Ind., 408 N.E.2d 1244; *Brewer v. State*, (1979) 271 Ind. 122, 390 N.E.2d 648; *Morris v. State*, (1977) 266 Ind. 473, 364 N.E.2d 132, *cert. den'd.* (1977), 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462. Defendant has not made a sufficient showing that the method used in Porter County to select jury venires at the time of his trial resulted in the exclusion or under-representation of any group which would prevent such panels from being fairly representative of the community.

Furthermore, even if defendant's contentions had been properly presented and supported by evidence on the record, we have held numerous times that the exclusive use of property tax rolls in the selection of Porter County jury venires does not violate

a defendant's right to a trial by a fair cross-section of the community. *Thomas v. State*, (1983) Ind., 443 N.E.2d 1197; *Tawney v. State*, (1982) Ind., 439 N.E.2d 582; *Grassmyer v. State*, (1981) Ind., 429 N.E.2d 248; *Daniels, supra.* Defendant has failed to show that he was denied any constitutional right with respect to the selection of the jury venire.

## II.

■■ While admitting the acts involved in the dealing offenses, defendant raised the defense of entrapment at trial. He tendered his Final Instruction No. 6 which read:

"The efficacy of the defense of entrapment is determined by whether the Defendant was induced to commit the crime by police activity or whether he was already predisposed to do so. This determination is based upon the Defendant's state of mind.

If you find that the criminal design was implanted in the Defendant's mind by the police activity then the Defendant was entrapped and you should find him not guilty.

If you find that the criminal design originated in the Defendant's own mind, then he was not entrapped, and should be found guilty as charged."

The trial judge refused to give this instruction, but did give Indiana Pattern Jury Instruction (Criminal) Section 10.17, which recited the entrapment statute, Ind.Code § 35–41–3–9, and which read:

"The defense of entrapment is defined as follows:

'It is a defense that:

The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and the person was not predisposed to commit the offense.

Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.'

If you find that a law enforcement officer, or his agent, used persuasion or other means likely to cause the defendant to engage in prohibited conduct and the defendant was not predisposed to commit the offense, you should find the defendant not guilty.

The defense of entrapment does not apply where a law enforcement officer, or his agent, merely afford the defendant the opportunity to commit an offense.

The State has the burden of disproving this defense beyond a reasonable doubt."

It is not reversible error for the trial court to refuse to give a tendered instruction when the substance of that instruction is covered adequately by another instruction given by the court. *Gilmore v. State*, (1981) Ind., 415 N.E.2d 70. The instruction given here defines the defense of entrapment as provided for by statute, indicates when the defense does or does not apply and allocates the burden of proof. We find that it covers the substance of defendant's tendered instruction and the trial court did not err in refusing to give that instruction.

## III.

Defendant next claims that the verdicts on the dealing offenses were not supported by sufficient evidence and were contrary to law because the evidence established that he was entrapped, and the State failed to prove his predisposition to commit these offenses beyond a reasonable doubt. As the trial court instructed the jury, Ind.Code § 35–41–3–9 provides:

"(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

■■ When the defense of entrapment is raised, the successful prosecution of the case becomes dependent upon whether the

State can prove that the prohibited conduct of the defendant was not the product of the efforts of the law enforcement officials involved or that the accused was predisposed to engage in such conduct. *Ryan v. State*, (1982) Ind., 431 N.E.2d 115; *Williams v. State*, (1980) Ind., 412 N.E.2d 1211. The standard of review in a case such as this, where the issue is whether there was sufficient evidence to support the conclusion that the defendant had a predisposition to commit these crimes, is the same as that for other sufficiency claims. *Voirol v. State*, (1980) Ind.App., 412 N.E.2d 861. We will not reweigh the evidence or resolve questions of credibility, but will only look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. If from that viewpoint there was evidence of probative value from which a reasonable trier of fact could conclude that a defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Taylor v. State*, (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657.

The evidence most favorable to the verdict here shows that on January 9, 1981, undercover police officer Ralph Levi accompanied an informant, Albert Harper, Jr., to the Mack residence. The pair was admitted by a woman. Several minutes later, defendant entered the room and inquired of Levi, "You're the dude that wants the quarter." Defendant told Levi that the price was $120. Levi gave defendant the money and defendant left the home, returning approximately an hour later with a plastic bag of plant material which he gave to Levi. Subsequent analysis showed this to be over thirty grams of marijuana. As Levi and Harper left the Mack residence, Levi remarked to defendant that he might see him again within a few weeks. Defendant answered, "Come back anytime."

On January 19, 1981, Levi visited the Mack home again, this time alone. Upon seeing Levi, defendant asked, "You need another quarter." Levi responded affirmatively and gave defendant another $120 after being told that was the price. Defendant told Levi he could pick up his purchase later. The next day, Levi returned to defendant's home with another undercover officer, William Peevler. Defendant handed Levi another plastic bag of plant material later shown to be over thirty grams of marijuana. Peevler asked defendant if he had seen any of the "acid" that was going around and defendant replied that there was a lot of "orange barrel" (a typical kind of lysergic acid diethylamide or LSD) going around. When Peevler remarked that he would be interested in purchasing no less than 500 "hits" or dosage units, defendant replied, "I could get you a good price on 500." He added that it might take him a couple of days to get the LSD and Levi said that they would give him sufficient notice. Levi and Peevler then left the residence and had no further contact with defendant, who was later arrested.

■ We find this evidence sufficient to allow the jury to conclude that the defendant was predisposed to commit these crimes and that the police merely provided him with the opportunities to do so. Inferences of predisposition arise from the evidence of defendant's willingness to deal with the undercover officers, his knowledge of the criminal market and of a source of supply, his familiarity with drug terminology, the multiple sales and defendant's readiness to participate in future sales. See *Sowers v. State*, (1981) Ind.App., 416 N.E.2d 466; *Johnson v. State*, (1980) Ind. App., 413 N.E.2d 686. In addition, while Officer Levi testified that a one ounce bag of marijuana is probably the most common amount sold on the street, Levi purchased close to one quarter of a pound from defendant here in each transaction—four times the amount commonly purchased by a user. The purchase price was similarly large and would also indicate to defendant that this was not for the casual personal use of the purchaser. From these facts, a reasonable jury could conclude that defendant was predisposed to commit these offenses. We find that there was sufficient

evidence to support the two convictions of dealing in marijuana.

### IV.

Defendant lastly contends that the habitual offender finding was contrary to law and not supported by sufficient evidence. He bases his contention on the premise that the two dealing convictions, the present underlying felonies, are contrary to law, are unsupported by sufficient evidence and cannot stand. As we have previously decided that these underlying felony convictions are valid, defendant's argument has no merit.

Defendant's convictions and the finding that he is an habitual offender are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.