**William Merrell GILLEY, Jr.,
Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 14S00–8802–CR–246.**

Supreme Court of Indiana.

March 15, 1989.

Blake Chambers, Fitzpatrick, Chambers, Waller, Leonard & Hanson, Washington, for appellant.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Judge.

 A jury trial resulted in appellant's conviction of three counts of Dealing in a

Schedule II Controlled Substance, a Class B felony, for which he received three fifteen (15) year sentences, his sentences to run concurrently. This Court *sua sponte* notes the trial court improperly demarcated appellant's habitual offender status as a separate Count IV and enhanced all his sentences collectively by twenty (20) years. The habitual offender status requires the trial court to enhance one or more of the sentences under Count I, II, or III by a term allowed by statute. *Starks v. State* (1988), Ind., 523 N.E.2d 735.

The facts are: Officer Paul Andry is an undercover agent for the Indiana State Police. He testified that prior to August of 1986 he visited the home of Jama Pate for the purpose of purchasing L.S.D., at which time he met appellant. Pate was not there but appellant told Andry he knew of a source of crank, or methamphetamine, and Andry should check back later if he wanted some.

On August 25, 1986, Andry visited the home of Debbie Pilk for the purpose of purchasing drugs and coincidentally encountered appellant again. Pilk did not know of a drug source, but appellant advised Andry of a possible source of some crank. Appellant told Andry the price for a quarter ounce of crank would be approximately $625. Andry placed an order for a quarter ounce of crank, and appellant said he would check and meet him in a city park at 9:00 p.m.

At 9:00 p.m., Andry and a confidential informant met with appellant in the park. Appellant said his source would not "front" him, or part with the drugs until he had the money. He proposed that Andry give him the money and sit at a certain spot in the park to watch the transaction so that he was assured his money would not be "ripped off." Because appellant's source had only four grams of crank to sell, Andry gave appellant $425 and watched from a distance as the source supplied the drugs to appellant.

Appellant reconvened with Andry and told him that due to the fact that a police officer drove by the park, they would conclude the transaction at a friend's residence. There, appellant produced four glass vials containing a white powder. He took a sample from each vial, placed it in a spoon, mixed it with water and injected it in his arm with a syringe. Appellant then advised Andry that it was good dope, but if Andry were dissatisfied with its quality, he would rectify the situation. He gave Andry the vials in a sack and they left. The powder in the vials was determined to be approximately 3.5 grams of methamphetamine.

On August 29, 1986, Andry and the confidential informant visited appellant's home for the purpose of purchasing drugs, and he told them his source could not obtain any crank for them at that time. He did say, however, that he had one-half of a gram for sale if they wanted it, and they bought it for $40. Appellant tore off a piece of a magazine page, placed the powder inside, and folded it up before giving it to Andry. The powder was determined to be .0899 grams of methamphetamine.

On September 3, 1986, Andry and the confidential informant visited appellant's home for the purpose of buying more crank. Appellant offered them an eighth of an ounce for $350. They all drove to a restaurant where Andry gave appellant $350, and appellant told them to meet him in the park. When appellant met them in the park, he suggested that they go back to the restaurant because the park was too heavily populated. In the parking lot, appellant got into Andry's vehicle and handed him what was determined to be 2.09 grams of methamphetamine.

Appellant first argues the State failed to produce evidence to contradict his defense of entrapment. The defense of entrapment is available when the prohibited conduct was the product of a law enforcement officer or his agent persuading the defendant to engage in the conduct and the defendant was not predisposed to commit the offense. Ind.Code § 35–41–3–9.

Appellant argues that precedent interpreting the term "predisposed" has improperly considered factors such as the defendant's knowledge of drug sources, prices and slang, possession of contraband, and

willingness to conduct further transactions. He asserts that the proper interpretation of the term "predisposed" entails analysis of past deeds relating to drug activity. He believes the liberal interpretation of "predisposition" used in past opinions prevents mere drug users, who are charged with dealing, from utilizing the defense of entrapment. He further asserts that because he had no ready supply of drugs immediately on hand, and because the State failed to prove any past transactions, the evidence was insufficient to establish his predisposition to deal drugs.

■ The question of entrapment is one of fact to be determined by the jury, and on review, we will not reweigh the evidence or judge the credibility of the witnesses. *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239.

■ A showing of predisposition negates the defense of entrapment. Relevant factors which indicate predisposition are knowledge of drug prices and sources, use and understanding of drug-related slang, solicitation of future drug sales, and multiple sales to officers. *Wallace v. State* (1986), Ind., 498 N.E.2d 961.

We disagree with appellant that the State must prove prior acts to show "predisposition." The evidence established that appellant utilized the language of drug dealers, was eager to help the undercover officer locate drugs, had a drug source readily available, and performed as the middleman between the supplier and the buyer.

Additionally, Officer Andry testified that at no time did appellant show any reluctance to sell the drugs, and he did not persuade or threaten appellant to induce him to sell the drugs. We find the evidence sufficiently negated appellant's defense of entrapment.

■ Appellant argues the trial court erroneously instructed the jury on entrapment.

Instruction No. 2 stated the aspects of the defense of entrapment discussed above, then stated,

"[W]here a person is already willing to commit a crime, it is not entrapment if the law enforcement agents merely provide an opportunity to commit the crime. So then, if you find beyond a reasonable doubt that, before anything was done by government agents, the defendant was willing to commit a crime ... and law enforcement agents did no more than offer the opportunity then you should find the defendant was not entrapped ... if the evidence ... leaves you with a reasonable doubt whether the defendant was willing to commit the crime, apart from the persuasion of law enforcement agents, then you must find him not guilty."

Appellant contends the use of the word "willing" in Instruction No. 2 was improper and the word "predisposed" should have been used instead.

The giving of jury instructions is within the trial court's discretion. An error in an instruction will not warrant reversal unless the error is of such a nature that the entire charge of which it is a part misled the jury on the law of the case. *Thomas v. State* (1987), Ind., 510 N.E.2d 651.

In appellant's case, the jury was given extensive instructions on entrapment including a quotation of Ind.Code § 35-41-3-9, factors to be considered when determining whether he was "predisposed," and an instruction stating that the question of predisposition is one of subjective intent for the trier of fact.

We cannot find that the use of the term "willing" rendered the entire charge misleading on the appropriate law. Considering our determination that the evidence is sufficient to find that appellant was predisposed to commit the charged crime, he has shown no prejudicial error.

Appellant argues his sentence was erroneous because the trial court failed to consider mitigating circumstances listed in Ind.Code § 35-38-1-7(c) which were relevant to his case.

■ When a trial court decreases or increases a sentence due to mitigating or aggravating circumstances, the factors

used in making that determination must be listed in the record. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054.

The trial court stated during appellant's sentencing hearing that the aggravating factors were appellant's extensive criminal history as a juvenile and an adult, appellant's history of drug abuse, the fact that he is in need of rehabilitative treatment that can best be provided by commitment to a penal facility, and that a lenient sentence would depreciate the seriousness of the offenses. The Court noted that the mitigating circumstances were appellant's close family ties and the fact that his imprisonment may result in a hardship upon his dependents but stated that the aggravating factors outweighed the mitigating factors.

■ It is for the trial judge to determine the sentencing weight to be given the aggravating or mitigating circumstances. *Hatchett v. State* (1987), Ind., 503 N.E.2d 398. The finding of mitigating factors is not mandatory and rests within the discretion of the trial court. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

Appellant's sentence is authorized by statute and we do not find that it is manifestly unreasonable in light of the nature of the offense and character of the offender. *Elliott v. State* (1988), Ind., 528 N.E.2d 87.

This cause is remanded to the trial court for appropriate sentencing regarding appellant's habitual offender status. In all other respects, the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.