Carl R. **DOCKERY, Appellant–**
**Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A02–9302–CR–78.

Court of Appeals of Indiana,
Second District.

Nov. 22, 1993.

Geoffrey A. Rivers, Muncie, for appellant-defendant.

Pamela Carter, Atty. Gen., Deana M. McIntire, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

FRIEDLANDER, Judge.

Carl Dockery appeals from his conviction for dealing in cocaine as a class B felony.[1] We reverse and remand for a new trial.

### ISSUE

Dockery raises four issues for our review, but we need address only the dispositive issue of whether an unfair trial resulted from allowing into evidence testimony that Dockery had committed crimes for which he had not been charged.

### FACTS

The facts most favorable to the judgment reveal the following. On the evening of April 13, 1992, Officer Craig of the Muncie City–Delaware County Drug Task Force and a confidential informant were working undercover when the informant introduced Officer Craig to a man named William Jackson. Officer Craig told Jackson that he wanted to purchase an "eightball" of cocaine [2] and Jackson told Officer Craig that he could take care of him. Jackson got into the vehicle with Officer Craig and the informant and directed Officer

---

1. Ind.Code 35–48–4–1(1).

2. An "eight-ball" of cocaine is equivalent to one-eighth of an ounce of cocaine. *Record* at 240.

Craig to a house just east of the intersection of Kirby and Ebright in Muncie.

When the three arrived at the house, which turned out to be Dockery's girlfriend's residence, Jackson got out of the car, walked up to the house, returned a few minutes later and asked Officer Craig for $250.00. When Officer Craig declined to hand over the money until he had the cocaine, Jackson returned to the house. A few minutes later, Jackson came back to the car and instructed Officer Craig to drive around for a few minutes while his man weighed the cocaine. The three men rode around for about ten minutes and then returned to the same house. Jackson got out of the car, walked up to the house and returned a few minutes later with Dockery.

Jackson and Dockery approached the passenger's side of the car and "they" asked Officer Craig for the purchase money. *Record* at 246. Officer Craig responded by asking to see the cocaine first. When either Jackson or Dockery asked Officer Craig if he in fact had any money, Officer Craig gave $250.00 to the informant, who was sitting in the passenger's seat. Officer Craig turned on the dome light and the informant counted out $250.00 in front of Jackson and Dockery. Dockery then reached in through the passenger window and handed Officer Craig a small plastic bag containing eleven small white cocaine rocks weighing 2.89 grams. The informant in turn held the $250.00 out the window. Jackson took the money, gave it to Dockery and the two walked away. When Jackson returned to the car, Officer Craig took him back to where he had originally picked him up and left him.

Officer Craig wore a transmitter on his person during the drug transaction involving Dockery. Tape recordings of that transaction were subsequently made and Officer Craig listened to the tape twice prior to trial. According to Officer Craig, the only words spoken by Dockery during

the entire sale were "thank you, cuz, or thanks cuz, or something to that effect." *Record* at 253.[3]

On May 22, 1992, Dockery was charged with dealing in cocaine. On June 5, 1992, Dockery filed a motion in limine to exclude from evidence and prohibit any reference at trial to, among other things, any previous arrest or detention of him which did not result in a conviction, or any other alleged offenses purportedly involving him in which he was neither arrested nor charged. *Record* at 16. On June 8, the trial court granted Dockery's motion in limine. On October 2, 1992, in response to the state's request for discovery, Dockery indicated his intention to plead the defense of entrapment. On October 13, 1992, following a jury trial, Dockery was found guilty as charged.

### DECISION

Dockery claims he received an unfair trial because the trial court allowed into evidence testimony regarding other crimes he had allegedly committed but the state had not pursued. We agree.

The entrapment statute provides:

"(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

Ind.Code 35–41–3–9.

■ The defense of entrapment becomes available to a defendant when the prohibited conduct was the result of a law enforcement officer or his agent persuading the defendant to engage in the conduct and the defendant was not predisposed to

---

**3.** At the time of the trial, Officer Craig did not have a copy of the tape and was unsure of the tape's location. Also at the time of trial, the police could not locate Jackson, thus he did not testify. In addition, the confidential informant, whose identity was never revealed, did not testify.

commit the offense. *Gilley v. State* (1989), Ind., 535 N.E.2d 130, 131. Once the defendant raises the defense of entrapment, the state must prove either that the accused's prohibited conduct was not the product of the efforts of the law enforcement official involved or that the accused was predisposed, or "ready, willing and able," to engage in such conduct anyway. *Gray v. State* (1991), Ind., 579 N.E.2d 605, 609; *Mack v. State* (1983), Ind., 457 N.E.2d 200. The question of entrapment is a factual one for the jury to determine, and on review, we will neither reweigh the evidence nor rejudge the credibility of the witnesses. *Gilley, supra.*

In our case, the state chose to negate Dockery's defense of entrapment by proving that Dockery was predisposed to commit the crime of dealing in cocaine. To establish Dockery's predisposition, the state may have used both evidence of events at the time of the drug transaction as well as circumstantial evidence. *Johnston v. State* (1988), Ind., 530 N.E.2d 1179. Relevant factors which would have indicated Dockery's predisposition might have included his "knowledge of prices and sources, possession of large quantities of the narcotic, ability to obtain access to narcotics in a short time, willingness to engage in future transactions, eagerness in the transaction in question and knowledge of slang...." *Id.* at 1181.

During Dockery's cross examination of Officer Craig and during his own direct examination, Dockery attempted to establish the defense of entrapment. First, Officer Craig testified during cross examination that he had paid Jackson $20.00 after the drug transaction took place. Second, Dockery testified that he had been harassed into selling cocaine to Officer Craig by his old friend Jackson.

The state attempted to negate Dockery's defense of entrapment by establishing Dockery's predisposition to deal in cocaine. To do so, the state introduced evidence of other crimes that Dockery had allegedly committed but which the state had not pursued for a variety of reasons. The record reveals that, at trial, the state was permitted, over objection, to cross-examine Dockery as follows:

> "[PROSECUTOR]: Your Honor, I need to have a conversation with the Court concerning the Motion in Limine. I'm asking to be relieved from the particular Motion in Limine so I can inquire of this witness.
>
> THE COURT: Approach the bench. (Counsel to bench—inaudible argument.)
>
> THE COURT: Motion in Limine previously granted will be raised to the extent indicated to Counsel at the bench. [Prosecutor], any additional questions?
>
> [PROSECUTOR]: Yes.

CONTINUED CROSS EXAMINATION BY [PROSECUTOR]:

> Q. Mr. Dockery, this isn't the first time you've been involved in a drug transaction, is it?
>
> [DEFENSE COUNSEL]: Your Honor, I would object as to the Motion in Limine, # 3, that it has not been reduced to a conviction, that it is inadmissible for impeachment purposes.
>
> THE COURT: Objection is noted and overruled. You can answer.
>
> A. Have I been involved in a drug transaction?
>
> Q. Yes. You've been involved in drug transactions before, haven't you?
>
> A. Yes, once before.
>
> Q. When was that?
>
> A. It was '89.
>
> Q. Where was it? ... Where were you when this drug transaction took place?
>
> [DEFENSE COUNSEL]: Your Honor—
>
> A. I wasn't in no drug transaction.
>
> Q. Let me help you out[.] Weren't you in Room 112 of the Days Inn on North Broadway?
>
> A. Oh, okay. I know what you're talking about now. No, I wasn't in no drug transaction.
>
> Q. You weren't there?
>
> A. I was at the motel, yes.
>
> Q. What were you doing there?

A. I was in the process of moving.

\* \* \* \* \* \*

Q. Didn't the police break in and take some marijuana away from you?

A. Yeah, a gram of marijuana, yes.

[DEFENSE COUNSEL]: Your Honor, I would object and move to strike. This is remote in time, 1989, and dealt with marijuana, not cocaine. And I move to strike this testimony.

THE COURT: Care to be heard, Counselor?

[PROSECUTOR]: It's relevant on the issue of predisposition, Your Honor.

THE COURT: Motion to strike is denied. It goes to the issue of predisposition since entrapment has been raised as an issue in this case. Objection is overruled and the motion to strike is denied. Go ahead.

\* \* \* \* \* \*

Q. And at that time did you also give the police permission to search [your] car, [an] Audi?

A. Yes, sir.

Q. And what did they find?

\* \* \* \* \* \*

Q. Pistol grip shotgun?

A. Yeah.

Q. Why were you carrying a pistol grip shotgun at that time?

A. I was in the process of moving—

[DEFENSE COUNSEL]: Your Honor, I would object. This is irrelevant to our issue, for us, if he had a gun in a car in 1989.

THE COURT: Overruled. You can answer.

A. That's what I said. I was in the process of moving and I had nowhere to leave it. I put it in my trunk. At the time I didn't know that a pistol grip shotgun was considered a pistol instead of a shotgun. I didn't know until then. Or I wouldn't never of had it if I knew that.

\* \* \* \* \* \*

REDIRECT EXAMINATION

Q. Have you ever been convicted of any felonies?

A. No, sir.

Q. Have you ever been convicted of any drug dealings whatsoever?

A. No, sir.

*Record* at 308–316.

Following this testimony, the state called as a rebuttal witness Robert Pyle, a detective with the Delaware County Police Department who has worked on the Drug Task Force for over five years. Detective Pyle testified, over objection, that he was one of the two officers who had discovered the marijuana and gun in Dockery's possession in 1989. According to Detective Pyle, the charges relating to Dockery's possession of the gun and marijuana were never pursued. Detective Pyle also testified that, in 1990, a confidential informant working for the Delaware County police had purchased cocaine from Dockery. Detective Pyle stated that he was not actually with the informant when the informant made the purchase, but rather he was one of the "cover officers." *Record* at 323. According to Detective Pyle, because this informant was later kidnapped by other "dopers," the charges against Dockery relating to this drug transaction were never pursued. *Record* at 322.

At the close of the evidence, the court instructed the jury as follows concerning this evidence:

"You have heard evidence the Defendant may have been involved in the commission of crimes other than the crime with which he is now charged.

You are cautioned that this evidence has been received solely upon the issue of the Defendant's predisposition to commit this offense."

*Record* at 77.

In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, our supreme court adopted Federal Rule of Evidence 404(b) as the rule governing the admissibility of uncharged

misconduct in Indiana. F.R.E. 404(b) reads in relevant part:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."

In *Hardin v. State* (1993), Ind., 611 N.E.2d 123, our supreme court adopted Federal Rule of Evidence 403 in its entirety. F.R.E. 403 reads as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

A trial court is required to employ these two evidentiary rules in conjunction with each other. *Hardin, supra.* If the state attempts to introduce evidence of a defendant's uncharged misconduct, a trial court must examine whether the evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime. *Id.* Where the evidence is offered only to produce the 'forbidden inference'—that the defendant has acted badly in the past and that his present, charged action conforms with his previous bad acts—then the evidence is not admissible. *Id.*

While the list is non-exclusive, F.R.E. 404(b) includes some permissible purposes for such evidence. Even if the evidence is admissible under F.R.E. 404(b), however, the evidence still must meet the test of F.R.E. 403. *Id.* In other words, while the evidence may have some probative value, it might nevertheless unfairly affect the outcome of the trial, violating the defendant's constitutional due process right to a fair trial. *Id.* The trial court must therefore apply an additional balancing test to determine whether the prejudicial effect of presenting the evidence would substantially outweigh its probative value. *Id.*

The state introduced evidence of Dockery's prior alleged misconduct for the sole purpose of proving his predisposition to commit the crime of dealing in cocaine. The state's argument for the admissibility of such evidence unfolds as follows. Evidence of uncharged misconduct may often be admissible because it promotes a legitimate inference about some issue in the case, notwithstanding its incidental revelation about a defendant's character. Evidence of unrelated criminal activity that is relevant to a fact in issue is not inadmissible just because it tends to show the defendant's guilt of another crime. Evidence of a defendant's involvement in other drug transactions goes directly to the issue of Defendant's predisposition. *Appellee's Brief* at 10.

In the instant case, even were we to agree that the evidence of prior misconduct satisfies the first prong of admissibility under F.R.E. 404(b), it nevertheless fails the second test, contained in F.R.E. 403. The argument that prior misconduct involving marijuana may tend to show, albeit minimally, a predisposition for involvement with cocaine, is not entirely illogical. However, if such evidence is offered solely for the purpose of showing predisposition, there is a substantial likelihood that its impact upon the jury will not be confined to an evaluation of the entrapment defense. Rather, evidence of this character invites the jury to conclude that, because the defendant committed the prior misdeed, he probably also committed the offense for which he is currently being tried. We are hard pressed to conceive of an instance in which the magnitude of the resulting prejudice could be outweighed by the probative value of such evidence. Indeed, the inevitability of the outcome of this balancing test may provide the basis of our Supreme Court's determination that "evidence of other offenses cannot be admitted merely in an attempt to show some predisposition of the accused to commit criminal acts or to establish some likelihood that he might do so, absent some exception to this rule." *Hardin, supra.* For these reasons, we determine that the trial court erred by admitting into evidence testimony regarding

Dockery's prior misconduct to prove predisposition.

■ In determining whether the trial court's error in allowing this evidence warrants reversal, we must assess its probable impact upon the jury. *See Hardin, supra.* We must decide whether the evidence substantially swayed the jury's verdict. If the error had substantial influence, or if we are left in grave doubt, a defendant's conviction cannot stand. *Id.* A defendant must show error and impact upon his substantial rights to prevail in order to gain reversal. *Id.*

■ In our case, Dockery has shown error in admitting the evidence of prior misconduct. The evidence of Dockery's marijuana and gun possession three years earlier and his alleged drug sale to a kidnapped drug informant two years earlier was admitted to prove his predisposition to deal in cocaine. Under the circumstances of this case, however, that evidence was simply not probative of Dockery's predisposition to commit the crime with which he was being tried and it was thus erroneously admitted. The evidence was neither evidence of events which occurred at the time, of the drug transaction nor one of the recognized "relevant factors" which would have indicated Dockery's predisposition, such as knowledge of prices and sources, possession of large quantities of the narcotic, ability to obtain access to narcotics in a short time, willingness to engage in future transactions, eagerness in the transaction in question or knowledge of slang. *Johnston, supra.* Further, the harmful effect of the error was compounded by the jury instruction which directed the jury to use the evidence for improper purposes (solely for the purpose of determining Dockery's predisposition to commit this offense). The instruction thus focused the jury's attention on the impermissible evidence and specifically authorized its consideration.

#### CONCLUSION

In reviewing the evidence presented at trial, we conclude that there is a substantial likelihood that the trial court's error in admitting evidence of Dockery's prior misconduct, coupled with the instruction directing the jury to consider the evidence solely for an improper purpose, contributed to the jury's guilty verdict, adversely impacted Dockery's substantial rights, impinged on his right to a fair trial, and was overly prejudicial. We thus reverse and remand for a new trial.

**Reversed and remanded.**

SULLIVAN and RUCKER, JJ., concur.