**Robert ELLIOTT, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 25S00–9301–CR–161.

Supreme Court of Indiana.

March 8, 1994.

Rehearing Denied July 13, 1994.

Bradley D. Hamilton, Merritt, Troemel, Meyer & Hamilton, Kokomo, for appellant.

Pamela Carter, Atty. Gen., Dana A. Childress–Jones, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a fifty-five (55) year sentence.

The facts are: Appellant, Robert Elliott, was formerly married to Crystal Elliott. The couple have two children, Lela and Robby. They separated on February 28, 1991. Following the separation, Crystal met Daniel Hines, the victim in this case.

In August or September of 1991, Hines moved in with Crystal with whom he was living at the time of his death. The children lived with Hines and Crystal but appellant was permitted visitation. During the time Hines was living with Crystal, appellant checked himself into Howard Community Hospital in order to seek treatment for mental health problems, which included his desire to harm his ex-wife and Hines.

In May of 1991, appellant called Crystal on the telephone, which call was recorded by her answering machine. In that call, he stated to Crystal he would "blow your brains out," as well as several other threats of violence. On February 9, 1992, appellant came to Crystal's home to pick up the children for visitation. Later, when he returned the children, appellant's companion notified Crystal that appellant was in the car and wanted to talk with her. During that conversation, appellant accused Hines of beating the children, which Crystal denied. Appellant then stated he did not want Hines to be around the children. He then produced a gun and stated that he wanted to talk with Hines.

When appellant entered the trailer, he was faced with Hines standing in the hallway with a shotgun. Sometime during the ensuing argument, Hines put the shotgun down. Appellant pulled out his gun and told Hines not to beat the children or he would blow his head off. Hines, Crystal, and appellant struggled over appellant's gun until appellant stated that he would leave. Crystal took him to the door and kept her hands on the gun until appellant was outside. As Crystal closed the door, appellant fired through the opening in the still slightly opened door. The bullet struck Hines in the chest and entered his heart. Appellant then reentered the trailer and attempted to aid others in resuscitating Hines.

Mike Davidson testified that he was in the cellblock with appellant after his arrest. Appellant told Davidson of shooting Hines and never claimed that it was an accident. He told Davidson that he went back in the trailer to act as though he were attempting to resuscitate Hines to make it look good when the police got there. He told Davidson that before the police got there he kept saying the shooting was an accident to convince everyone that it was an accident. Appellant's six-year-old daughter, Lela, testified that a short time before the shooting appellant said he was going to shoot Hines and that the children's mother was worthless.

Appellant claims the evidence is insufficient to convict him of murder. Appellant concedes that this Court will not reweigh evidence or judge the credibility of witnesses, citing *Jones v. State* (1992), Ind., 589 N.E.2d 241, and other cases. However, he claims a total absence of evidence that he intended to kill Hines and maintains that the shot was fired accidentally.

However, it is the province of the jury to determine intent from all the surrounding facts and circumstances. *Metzler v. State* (1986), Ind., 540 N.E.2d 606. Testimony of appellant's former wife Crystal, his daughter Lela, and his former cellmate Davidson furnished the jury with ample evidence to conclude that appellant in fact did deliberately fire the shot which killed Hines.

We see no lack of evidence of intent in this case.

■ Appellant contends the court erred by allowing irrelevant evidence in permitting the decedent's mother, Mrs. Beverly Hines, to testify over his objection concerning her son's background, including his relationship with Crystal Elliott. In allowing this testimony, the trial court ruled that the background information concerning the individuals involved was relevant. The trial court ruling was correct in this regard. *See Jones v. State* (1992), Ind.App., 605 N.E.2d 193.

Appellant also claims the trial court erred when it permitted evidence of past threats and statements made by appellant toward Crystal and Hines, including a taped telephone conversation referred to above. In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, this Court adopted the language of Federal Rules of Evidence, Rule 404(b), which provides that prior acts of a defendant may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ In the case at bar, appellant's prior threats and statements concerning Crystal and Hines are admissible to show the relationship between the parties and appellant's motive, plan, and absence of accident. *See Price v. State* (1993), Ind., 619 N.E.2d 582; *King v. State* (1987), Ind., 508 N.E.2d 1259. There was no error in the admission of this evidence.

Appellant also contends the trial court erred in permitting the introduction of State's Exhibits 9 and 10. These were two pictures of the decedent's heart which had been removed from his body and photographed during his autopsy. Appellant takes the position that there was no dispute that he had fired the shot that killed the decedent and that the doctor performing the autopsy had testified that the bullet struck the decedent's heart. He therefore claims it was prejudicial error to submit the gruesome pictures of the damaged heart when the evidence in the record was not disputed.

■ The admission of photographs is within the sound discretion of a trial court

and the court's ruling will not be disturbed absent an abuse of that discretion. *Green v. State* (1992), Ind., 587 N.E.2d 1314. A photograph is generally admissible if it assists the jury in understanding the testimony being presented by a witness. *Id.* The fact that a photograph may depict gruesome details of a crime is not sufficient basis for excluding it. *Id.*

■ Although there was undisputed evidence in the record that appellant had fired the shot and that it penetrated the decedent's heart, the State was faced with overcoming appellant's claim that the shot was fired accidentally. The pictures of the damaged heart were used by the doctor to demonstrate the path of the bullet and the cause of death. The fact that the shot was fired from outside the trailer through the crack in the door before the door was completely closed and the fact that the bullet struck appellant directly in the heart was evidence from which the jury could conclude that the shot was not fired accidentally but was deliberately fired by appellant with the intent to strike the decedent.

■ Even if we would assume for the sake of argument that the pictures were improperly admitted, it hardly can be said in the face of all the other evidence above recited that the showing of the pictures would have had any perceptible effect on the jury's decision. In deciding whether evidence is harmless, we judge whether the jury's verdict was substantially swayed by the erroneous admission of the evidence. *Gibbs v. State* (1989), Ind., 538 N.E.2d 937. No reversible error is demonstrated concerning the admission of State's Exhibits 9 and 10.

■ Appellant contends the trial court erred in the admission of the testimony of Lori Beales, who was employed as a therapist at Howard Community Hospital. As above stated, appellant committed himself to the hospital because of his ongoing mental health problems, among which was his desire to harm his ex-wife and the decedent. Appellant claims that inasmuch as Beales worked with the psychiatrist at the hospital, any information she garnered from appellant was privileged and notes in the *Matter of*

*C.P.* (1990), Ind., 563 N.E.2d 1275, we held that a counselor who aides a psychiatrist falls within the doctor-patient privilege. However, we also held in that case that a counselor who in fact is the care-giver and acts largely independently is not an adjunct to the psychiatrist and thus is not covered by the privilege. The determination as to the existence of a doctor-patient relationship is a question of fact to be determined by the trial court. *Id.*

■ In a hearing outside the presence of the jury, Beales testified that she conducted an interview with appellant, and that he was separately interviewed by a psychiatrist who made his own report. She further stated her interview was for the purpose of being able to counsel the individual, that the psychiatrist's control over her is limited, and consists of among other things the prescribing of medications which she is not authorized to do. However, she explained she acts on her own in conducting her interviews and attempting to aid the patient. She testified that she receives no direct orders from the psychiatrist as to how she is to treat the patient.

Under the circumstances, we cannot say the trial court abused his discretion in holding that Beales did not come within the doctor-patient privilege.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.