**Carl R. DOCKERY, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 18S02–9412–CR–1229.

Supreme Court of Indiana.

Dec. 19, 1994.

574

Geoffrey A. Rivers, Muncie, for appellant.

Pamela Carter, Atty. Gen., Deana McIntire Smith, Deputy Atty. Gen., Indianapolis, for appellee.

Rebecca S. McClure, Chairman, Lebanon, Stephen J. Johnson, Indianapolis, for amicus curiae Indiana Pros. Attys. Council.

### ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case comes to us on the State's Petition to Transfer the decision of the Court of Appeals in *Dockery v. State* (1993), Ind.App., 622 N.E.2d 1346, *reh'g denied.* In that decision the Court of Appeals reversed Carl Dockery's conviction for Dealing in Cocaine

1. Indiana Code § 35–48–4–1(a)(1) (1993).

because it concluded that the trial court improperly admitted evidence of prior bad acts offered by the State to rebut Dockery's entrapment defense. We agree with the Court of Appeals that Dockery's conviction must be reversed; we disagree, however, about the reasons why.

### Facts

On October 13, 1992, a Delaware County jury convicted Carl Dockery of Dealing in Cocaine, a Class B felony.[1] Dockery was sentenced to six years in prison.

The facts in the record most favorable to sustaining the verdict are that on April 13, 1992, an informant introduced Officer Craig of the Delaware County Drug Task Force to William Jackson. Officer Craig told Jackson that he wanted to purchase an "eight-ball"[2] of cocaine. Jackson said that he could take care of him.

Jackson got into the car with Officer Craig and the informant and directed them to a house where Dockery's girlfriend lived. Once at the house, Jackson got out of the car, returned from the house a few minutes later, and asked Officer Craig for two hundred and fifty dollars. Officer Craig refused to hand over any money until he had the cocaine, so Jackson went back into the house.

When Jackson came back out to the car again, he told Officer Craig to drive around for a while to give his man time to weigh the cocaine. After driving around the neighborhood for about ten minutes, Officer Craig drove the car back to the same house, where Jackson again got out of the car and went inside the house. A few minutes later Jackson returned to the car accompanied by Dockery.

Both Dockery and Jackson walked up to the passenger side of the car and "they ... requested the money." Officer Craig said that he wanted to see the cocaine first. Jackson then asked Officer Craig if he in fact had any money, at which time Officer Craig gave two hundred and fifty dollars to the informant, who was sitting in the passenger's

2. An "eightball" of cocaine is one eighth of an ounce of cocaine.

seat. Officer Craig turned on the car's dome light and the informant counted the money in front of Dockery and Jackson.

When the money had been counted, Dockery reached in the passenger-side window and handed Officer Craig a small plastic bag that contained eleven white rocks of cocaine that together weighed 2.89 grams. The informant then handed the money out the window to Jackson, who gave it to Dockery, and both Jackson and Dockery walked away.

Officer Craig testified that in preparation for Dockery's trial he had listened to audiotapes of the entire transaction and that the only words spoken by Dockery were "Thanks, cuz."

In May of 1992, Dockery was charged with Dealing in Cocaine. In June, Dockery filed a motion in limine to exclude, *inter alia*, any evidence of his previous arrest or detention that did not result in a conviction, and any evidence of other offenses in which he was allegedly involved but for which he had been neither charged nor arrested. The trial court granted that motion.

Shortly before trial in October of 1992, in response to the State's request for discovery, Dockery indicated his intention to raise the defense of entrapment. During the State's cross-examination of Dockery at trial, the trial court lifted its order on Dockery's motion in limine and permitted the State to cross-examine Dockery with respect to certain previous events.[3]

Over repeated objections of defense counsel, Dockery testified on cross-examination that in 1989 he was in a motel when the police broke into the room and seized an ounce of marijuana. He also testified that he gave police permission to search his car, where they found a pistol-grip shotgun in the trunk. By way of explanation, Dockery said that he had been in the process of moving, did not have anywhere else to keep the shotgun, and did not know that a pistol-grip shotgun was legally classified as a pistol and not as a shotgun.

To further rebut Dockery's entrapment defense, the State called as a witness Officer Robert Pyle, also of the Delaware County Drug Task Force. Officer Pyle had been involved in the 1989 seizure of marijuana in Dockery's motel room and of the pistol-grip shotgun from Dockery's car. Over repeated objections of defense counsel, Officer Pyle testified about those events and said additionally that the case had not been pursued both because the prosecutor was not interested in the case and because his partner had been killed and thus would not have been available to testify.

Officer Pyle also testified over objection about a second incident, this time in June of 1990, when Dockery allegedly sold rock cocaine to a confidential informant. He said that that case against Dockery had not been pursued because the confidential informant was "kidnapped by some other dopers." On cross-examination by defense counsel Officer Pyle said that he was the cover officer for this particular operation and so, although he had been nearby, he had not actually been present at this alleged transaction between Dockery and the informant.

### Discussion

■ The decision of the Court of Appeals relied in part on Federal Rule of Evidence 404(b), which we adopted in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334. *Lannan* was explicit, however, that the adoption of Federal Rule of Evidence 404(b) was not to be given retroactive effect. *Lannan*, 600 N.E.2d at 1339. Dockery's trial ended on October 13, 1992, and *Lannan* was not decided until October 16, 1992. *Lannan*, 600 N.E.2d at 1334. Moreover, in *Pirnat v. State* (1992), 600 N.E.2d 1342, *reh'g denied* (1993), 607 N.E.2d 973 (per curiam), *after remand* (1993), Ind.App., 612 N.E.2d 153, *reh'g denied*, decided the same day as *Lannan*, we said:

> We have today in *Lannan v. State*, 600 N.E.2d 1334 (1992), revisited the depraved sexual instinct exception and announced a

---

**3.** The trial court lifted the motion in limine it had previously granted during a bench conference: "The Court: 'Motion in Limine previously granted will be raised to the extent indicated to Coun-sel at the bench.'" There is no indication in the record, other than the evidence admitted by the trial court, of the extent to which the trial court lifted the motion in limine.

new rule concerning the admissibility of prior bad acts *in sex offense* cases. Inasmuch as Pirnat's direct appeal is currently pending as this rule is announced, the rule of *Lannan* should be applied to his case.

*Id.* at 1342 (citations omitted) (emphasis added). *Accord, Wickizer v. State* (1993), Ind., 626 N.E.2d 795, 796. Although coming to us as part of the direct appeal process, Dockery's case does not involve a sex offense. *Lannan* and Federal Rule of Evidence 404(b) do not apply.[4] Therefore, the law of evidence applicable to Dockery's case is that in effect prior to *Lannan*'s adoption of Federal Rule of Evidence 404(b).[5] The issue we must decide, then, is whether under the pre-*Lannan* law of evidence, the trial court committed reversible error when it admitted evidence of prior bad acts offered by the State to rebut Dockery's defense of entrapment.

### A.

■ In Indiana, entrapment is a defense provided for by statute. Indiana Code § 35–41–3–9 (1993) provides:

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Once a defendant has both indicated his intent to rely on the defense of entrapment and has established police inducement, the burden shifts to the State to show the defendant's predisposition to commit the crime. *Smith v. State* (1991), Ind., 565 N.E.2d 1059, 1063; *Wallace v. State* (1986), Ind., 498

N.E.2d 961, 964; *Ryan v. State* (1982), Ind., 431 N.E.2d 115, 117; *Townsend v. State* (1981), Ind.App., 418 N.E.2d 554, 558, *trans. denied, cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982). Whether a defendant was predisposed to commit the crime charged is a question for the trier of fact. *Gilley v. State* (1989), Ind., 535 N.E.2d 130, 132; *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239, 241; *Marts v. State* (1982), Ind., 432 N.E.2d 18, 22. The standard by which the State must prove the defendant's predisposition is beyond a reasonable doubt. *Gray v. State* (1991), Ind., 579 N.E.2d 605, 609, *reh'g denied; Mack v. State* (1983), Ind., 457 N.E.2d 200, 202; *Ryan,* 431 N.E.2d at 117. The State must prove the defendant's predisposition with evidence subject to the normal rules of admissibility. *Stewart v. State* (1979), 271 Ind. 169, 173, 390 N.E.2d 1018, 1022; *Koke v. State,* (1986), Ind.App., 498 N.E.2d 1326, 1330 n. 3, *reh'g denied, trans. denied; Medvid v. State* (1977), 172 Ind.App. 27, 30, 359 N.E.2d 274, 276, *reh'g denied, trans. denied.* If the defendant shows police inducement and the State fails to show predisposition on the part of the defendant to commit the crime charged, entrapment is established as a matter of law. *Hardin v. State* (1976), 265 Ind. 635, 639, 358 N.E.2d 134, 136; *Gray v. State* (1967), 249 Ind. 629, 633–34, 231 N.E.2d 793, 796; *Fearrin v. State* (1990), Ind.App., 551 N.E.2d 472, 474, *trans. denied.* In *Gray* we also said that when the evidence establishes no more than a sale or delivery of contraband in response to solicitation by the police or their agents, there is a failure of proof on the issue of predisposition. *Gray,* 249 Ind. at 633–34, 231 N.E.2d at 796. *See also Voirol v. State* (1980), Ind.App., 412 N.E.2d 861, 864, *trans. denied; Medvid,* 172 Ind.App. at 29, 359 N.E.2d at 275.

---

**4.** For cases applying *Lannan* and Federal Rule of Evidence 404(b) to trials ending after *Lannan* was decided but before the effective date of the Indiana Evidence Rules, *see Wise v. State* (1994), Ind.App., 635 N.E.2d 221, 224 n. 1, *trans. denied; Carter v. State* (1994), Ind.App., 634 N.E.2d 830, 833 n. 2; *Bolin v. State* (1994), Ind.App., 634 N.E.2d 546, 548; *Elliott v. State* (1994), Ind., 630 N.E.2d 202, 204; *Levi v. State* (1994), Ind.App., 627 N.E.2d 1345, 1348, *trans. denied.*

**5.** *But see Brim v. State* (1993), Ind.App., 624 N.E.2d 27, 34–35, *trans. denied* (applying *Lannan* and Federal Rule of Evidence 404(b) to permit evidence of prior bad acts to show identity in a trial apparently ending before *Lannan* was decided).

█ We review a claim of entrapment using the same standard that applies to other challenges to the sufficiency of evidence. *Gray,* 579 N.E.2d at 609; *Mack,* 457 N.E.2d at 203; *Marts,* 432 N.E.2d at 22. We consider only the evidence that supports the verdict, and we draw all reasonable inferences from that evidence. *Wear v. State* (1992), Ind., 593 N.E.2d 1179, 1179; *Gray,* 579 N.E.2d at 609. We will neither reweigh the evidence nor judge the credibility of witnesses. *Gray,* 579 N.E.2d at 609; *Gilley,* 535 N.E.2d at 132. We will uphold a conviction if the record supports it with substantial evidence of probative value from which a reasonable trier of fact could infer that the appellant was guilty beyond a reasonable doubt. *Garrett v. State* (1993), Ind., 602 N.E.2d 139, 142, *reh'g denied; Gray,* 579 N.E.2d at 609; *Ryan,* 431 N.E.2d at 117.

### B.

Before our adoption of Federal Rule of Evidence 404(b) in *Lannan,* generally "evidence of a defendant's prior acts of uncharged misconduct was inadmissible to prove the defendant's guilt." *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 127 (citing *Barger v. State* (1992), Ind., 587 N.E.2d 1304, 1309, *reh'g denied* ). In *Penley v. State* (1987), Ind., 506 N.E.2d 806, we said:

> The notion that the State may not punish a person for his character is one of the foundations of our system of jurisprudence. Evidence of misconduct other than that with which one is charged ("uncharged misconduct") will naturally give rise to the inference that the defendant is of bad character. This, in turn, poses the danger that the jury will convict the defendant solely on this inference.

*Id.* at 808. And as we explained in *Hardin:*

> The rationale for this rule is predicated upon our fundamental precept that every

defendant should only be required to defend against the specific charges filed. In instances where evidence of prior uncharged misconduct is admitted at trial, a defendant would be forced to refute these allegations as well as defend against the crime specifically charged. If a court were to indiscriminately admit proof of criminal activity beyond that specifically charged, then the burden on the defense would be intolerably enlarged and the court would effectively negate the due process presumption of innocence that our system of justice accords to every accused.

*Hardin,* 611 N.E.2d at 127–28.

█ Before *Lannan*'s adoption of Federal Rule of Evidence 404(b), evidence of prior bad acts, including evidence of a crime other than that charged, was admissible only to show such things as motive, opportunity, intent, purpose, preparation, knowledge, identity, absence of mistake, or that the commission of the crime charged was part of a common scheme or plan. *Wrencher v. State* (1994), Ind., 635 N.E.2d 1095, 1095–96; *Lannan,* 600 N.E.2d at 1339; *Little v. State* (1986), Ind., 501 N.E.2d 412, 413, *after remand,* (1991), Ind., 580 N.E.2d 675; *Smith v. State* (1983), 454 N.E.2d 412, 414. That is, character evidence, including evidence of prior bad acts, was generally inadmissible unless (1) that evidence was independently relevant to some issue other than the defendant's bad character and the inference that the defendant acted in conformity with that bad character, or (2) there existed a specific exception to the rule against the admissibility of character evidence. *See Hardin,* 611 N.E.2d at 128; *Byrd v. State* (1992), Ind., 593 N.E.2d 1183, 1184–85; *Penley,* 506 N.E.2d at 808.[6]

---

**6.** The Seventh Circuit test for admissibility of evidence of prior bad acts under Federal Rule of Evidence 404(b) is the following:

(1) The proffered evidence must be relevant to a matter in issue other than the defendant's propensity to commit the charged crime;
(2) the prior bad act must be similar in nature and close in time to the crime charged;
(3) the prosecution must establish that the defendant in fact committed the prior bad act;

(4) the probative value of the evidence must not be outweighed by its prejudicial effect. *United States v. Goodapple,* 958 F.2d 1402, 1406–07 (7th Cir.1992). Moreover, character evidence is routinely admissible in federal prosecution when a defendant raises an entrapment defense. *E.g., United States v. Faymore,* 736 F.2d 328 (6th Cir.1984), *cert. denied,* 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984); *United States v. Parish,* 736 F.2d 152 (5th Cir.1984); *United States v. Moore,* 732 F.2d 983 (D.C.Cir.1984).

One of the exceptions to the general rule against the admissibility of character evidence, including evidence of prior bad acts, arose when a defendant specifically placed character at issue by raising the defense of entrapment. *Hardin*, 611 N.E.2d at 131 ("In instances where entrapment is presented as a defense, the state may introduce evidence of the defendant's character to rebut the defense."); *Allen v. State* (1988), Ind., 518 N.E.2d 800, 802 ("It was not error to admit evidence of appellant's prior convictions once he indicated an intention to use an entrapment defense."); *Medvid*, 172 Ind. App. at 30, 359 N.E.2d at 276 ("To establish [that the government merely afforded the defendant an opportunity to satisfy his criminal intent] it is proper for the state to present evidence of prior crimes from which the jury might reasonably infer the accused's predisposition to commit the offense on trial."). *See also Stewart*, 271 Ind. at 173, 390 N.E.2d at 1022 ("It has been held that evidence of similar unlawful conduct bearing on a defendant's predisposition is subject to normal rules of admissibility."); *Townsend*, 418 N.E.2d at 556 ("Prior to trial, Townsend formally stated that he would not rely on the defense of entrapment. This election was prompted by a desire to keep from the jury prejudicial evidence of predisposition apparently involving prior drug incidents.").[7]

## C.

The trial court admitted against Dockery evidence involving two prior incidents: the 1989 incident involving possession of 1.1 grams of marijuana and a pistol-grip shotgun, and the 1990 incident when Dockery allegedly sold rock cocaine to a confidential informant. This was the only evidence the State offered to prove Dockery's predisposition to commit the crime with which he was charged—Dealing in Cocaine—and thereby to rebut Dockery's defense of entrapment.

The possession of 1.1 ounces of marijuana and a pistol-grip shotgun is simply irrelevant to the issue of predisposition to deal in cocaine. In *Payne v. State* (1976), 168 Ind.App. 394, 343 N.E.2d 325, *reh'g denied, trans. denied* (concurring opinion of Garrard, J. in which Hoffman, J. also concurred), the Court of Appeals said that "[c]ircumstantial evidence giving rise to the necessary inference of intent might also be found in such things as the defendant's possession of such a large quantity of contraband that the purpose of selling might be inferred." 168 Ind.App. at 413, 343 N.E.2d at 338. In *Voirol v. State* (1980), Ind.App., 412 N.E.2d 861, *trans. denied*, the Court of Appeals relied on its *Payne* decision and said that "[w]e surmise that a quantity permitting an inference of predisposition to sell would be such a quantity that could not be personally consumed or utilized and therefore of necessity available for delivery or sale." 412 N.E.2d at 864. In *Voirol*, the defendant was accused and convicted of delivering fifty to sixty hits of a controlled substance. *Id.* The Court of Appeals reversed the defendant's conviction, concluding that the State had failed to rebut the defendant's entrapment defense because "[n]o evidence was presented as to the quality or strength of the tablets from which the relative determination of largeness of supply [could] be made." *Id.*

Had Dockery possessed or had access to 1.1 ounces of marijuana, and had he

Consequently, the Court of Appeals' conclusion was mistaken that under Federal Rule of Evidence 403, which the *Goodapple* test incorporates in its part (4), the prejudicial effect of evidence of prior bad acts will almost always outweigh the probative value of such evidence when it is offered to rebut a defense of entrapment.

7. *But see Young v. State* (1993), Ind.App., 620 N.E.2d 21, *trans. denied:*

Factors which indicate a predisposition to sell drugs include: knowledge of drug prices; knowledge of drug sources and suppliers; use and understanding of terminology of the drug market; solicitation of future drug sales; and multiple sales to undercover officers....

....

Proof of predisposition is relevant only to ensure that, on the particular occasion, "the proscribed activity was not solely the idea of the police officials." *See Baird v. State* (1983), Ind., 446 N.E.2d 342, 343 (citation omitted). This purpose, coupled with the factors we use to determine predisposition, support the conclusion that *the critical circumstances are those that exist at the time of the solicitation, and not before.*

*Young*, 620 N.E.2d at 24–25 (some citations omitted) (emphasis added).

delivered that marijuana to Officer Pyle under the same circumstances as he delivered the rock cocaine, access or possession of such a small amount of marijuana would have been legally insufficient to support an inference of predisposition to deliver. If delivery itself of 1.1 ounces of marijuana could not have supported an inference of predisposition to deliver, evidence of that delivery would have been irrelevant with respect to the issue of predisposition and therefore inadmissible on that issue. *A fortiori*, Dockery's possession of a minuscule amount of marijuana some two years before he delivered cocaine to Officer Pyle was irrelevant to Dockery's predisposition to deliver the cocaine. To put it differently, Dockery's possession of 1.1 ounces of marijuana and a pistol-grip shotgun was not "sufficiently similar unlawful conduct to permit its admission into evidence as bearing on predisposition." *Powers v. State* (1978), 177 Ind.App. 560, 562, 380 N.E.2d 598, 601, *reh'g denied*, (1978), 177 Ind.App. 560, 382 N.E.2d 719, *trans. denied.*[8] Admission of this evidence over Dockery's timely objection was error.

### D.

■ When inadmissible evidence has been presented to the jury, reversal of a conviction is only required if the erroneous admission prejudiced the defendant's substantial rights. Ind.Trial Rule 61; *Martin v. State* (1993), Ind., 622 N.E.2d 185, 188, *reh'g denied.* As we said in *Martin:*

> In determining whether a reversal is appropriate due to erroneously admitted evidence, this Court has the duty to assess the probable impact of the evidence on the jury. Reversal is compelled where the record as a whole discloses that the erroneously-admitted evidence "was likely to have a prejudicial impact on the mind of

the average juror, thereby contributing to the verdict."

*Id.* (Quoting *Mitchell v. State* (1972), 259 Ind. 418, 424, 287 N.E.2d 860, 863) (citations omitted).

■ The only evidence of Dockery's predisposition to deliver cocaine other than his possession of marijuana was his alleged delivery of cocaine to a confidential informant. Even if Officer Pyle's testimony about the delivery of rock cocaine to the informant was not inadmissible hearsay,[9] Officer Pyle had personal knowledge of Dockery's possession of marijuana while he had only second hand knowledge of Dockery's alleged delivery of rock cocaine. Moreover, Dockery was compelled to admit under cross-examination that he had possessed the marijuana. Under these circumstances we can only conclude that the erroneous admission of evidence concerning Dockery's prior possession of marijuana had a prejudicial impact on the mind of the average juror and thereby contributed to the verdict.

### Conclusion

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals, App.R. 11(B)(3), and reverse Dockery's conviction for Dealing in Cocaine.

SHEPARD, C.J., and DeBRULER and DICKSON, J.J., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I agree with the majority opinion that the evidence of appellant's possession of a small amount of marijuana some two years before his arrest in the instant case and the possession of a pistol grip shotgun was not, standing alone, sufficient evidence of prior conduct to show his propensity to deal cocaine. I

---

**8.** *Powers* involved the admission into evidence of the defendant's prior conviction for possession of a controlled substance to rebut the defendant's defense of entrapment to charges of delivery of a controlled substance. Although the Court of Appeals decided that the evidence of conviction for possession was admissible to show the defendant's predisposition to deliver, its opinion makes no mention of the amount or type of controlled substance the defendant had been pre-

viously convicted of possessing. Indeed, the Court of Appeals did not mention what controlled substance *Powers* was convicted of delivering.

**9.** Although Dockery did object to this testimony on the ground that it was not relevant, he did not object that the testimony was hearsay.

cannot, however, agree with the majority that this is reversible error. Under the cases cited by the majority, the fact that appellant had in the past sold cocaine was sufficient evidence of his propensity to deal and was properly admitted. I would therefore hold that the admissions of the evidence of marijuana and the shotgun were harmless error and would affirm the trial court in the conviction of appellant.