Paul HOPKINS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 37A03–9507–CR–221.

Court of Appeals of Indiana.

June 21, 1996.

Rehearing Denied Aug. 26, 1996.

Transfer Denied Oct. 24, 1996.

Dave Welter, Valparaiso, for Appellant.

Pamela Carter, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

STATON, Judge.

A jury found Paul Hopkins ("Hopkins") guilty of two counts of dealing in a schedule II controlled substance, a class B felony [1], for which he was sentenced to twelve years in prison. Hopkins presents four issues for appellate review which we consolidate into three and restate as follows:

I.   Whether the trial court's twelve year sentence was manifestly unreasonable.

II.  Whether the trial court erred in admitting certain evidence in violation of Ind. Evidence Rule 404(b).

III. Whether there was sufficient evidence to support his conviction.

We affirm in part, reverse in part, and remand.

The facts most favorable to the State reveal that in November 1993, the Multi–County Drug Task Force arranged for police informant, Steven Frederick ("Frederick"), to purchase $300.00 to $400.00 of prescription medication from Hopkins. On November 5, 1993, Frederick and Hopkins drove to the Fagen Pharmacy in Crown Point, Indiana.

---

1.   IND.CODE § 35–48–4–2 (1993).

Frederick gave Hopkins $400.00 and Hopkins then purchased 240 Vicodin pills for $310.00. The men drove to Hopkins' home where Hopkins took the pills out of the bottle, dropped them into a Fagen pharmacy bag, and gave the bag to Frederick. Frederick left the home and gave the pills and $79.00 to the police.

Seven days later, Frederick contacted Hopkins about another purchase and Hopkins told Frederick he would sell him some Percodan pills after he picked up his prescription. The parties agreed that Frederick would pay $2.00 per pill. The police provided Frederick with $100.00 for the purchase and under police surveillance, Frederick went to Hopkins' house where Frederick gave Hopkins the $100.00 in exchange for 60 Percodan pills.[2] Frederick returned to his home and turned the pills over to the police.

Hopkins was subsequently charged and found guilty of two counts of dealing in a schedule II controlled substance. For each count, Hopkins received the ten year presumptive sentence with four years suspended, resulting in a six year sentence on each count with the terms to run consecutively.

## I.

### Sentencing

First, Hopkins contends that the trial court's imposition of a twelve year sentence was manifestly unreasonable and that the trial court erred when it failed to articulate reasons supporting the imposition of consecutive sentences.

■■■ This court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B)(1); Hurt v. State, 657 N.E.2d 112, 114 (Ind.1995). A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which

**2.** Hopkins gave Frederick ten extra pills to cover a $20.00 debt.

**3.** The trial court imposed the maximum term of imprisonment and maximum fine for all three

such sentence was imposed. Id. If, and only if, we find such inappropriateness exists will we reverse a sentence in order to make it reasonable. Barany v. State, 658 N.E.2d 60, 67 (Ind.1995). Sentencing is normally left to the discretion of the trial court. Id.

■■■ Hopkins argues that his sentence is manifestly unreasonable based upon Beno v. State, 581 N.E.2d 922 (Ind.1991). In Beno, the defendant was convicted of two counts of dealing in cocaine and one count of maintaining a common nuisance. Id. at 923. In reversing the trial court's imposition of a seventy-four year sentence and a $30,000 fine[3], the Indiana Supreme Court determined that consecutive sentences are manifestly unreasonable where the state sponsors a series of offenses in a sting operation. Id. The court observed that Beno's convictions were the result of a police sting operation of virtually identical crimes which were committed within four days of each other. Id. at 924. The court explained:

> If Beno, for instance, had sold drugs to different persons or if he had provided a different type of drug during each buy, the consecutive sentences imposed might seem more appropriate. Here, however, because the crimes committed were nearly identical State-sponsored buys, consecutive sentences were inappropriate.

Id.

In Gregory v. State, 644 N.E.2d 543, 546 (Ind.1994), reh. denied, the Indiana Supreme Court again determined that the imposition of consecutive sentences was manifestly unreasonable where the defendant sold the same drug to the same informant on several occasions over a short period of time. The court noted that while the police may find it necessary to conduct a series of buys, the trial court "should be leery of sentencing a defendant to consecutive terms for each count" as "[p]resumably, the police could have set up any number of additional transactions, each time adding an additional count ..." Id.

counts and ordered the imprisonment terms to run consecutively in order that "Beno would 'never see the light of day again.'" Id. at 924.

Here, Hopkins was convicted of two counts of dealing in a controlled substance based upon incidents which were virtually identical to one another as the buys occurred within one week of each other, were sponsored by the State with the use of the same police informant, and both involved prescription painkillers. Following the Indiana Supreme Court's directive in *Beno,* this court has repeatedly determined that the imposition of consecutive sentences in similar circumstances was improper. *See Robertson v. State,* 650 N.E.2d 1177, 1185 (Ind.Ct.App. 1995), *reh. denied, disapproved on other grounds,* 658 N.E.2d 563 (Ind.1995) (consecutive sentences inappropriate under *Beno* based upon controlled crimes which involved the same drug to the same police officer, arranged by the same informant on several occasions in a relatively short period of time); *Grimes v. State,* 633 N.E.2d 262, 265–266 (Ind.Ct.App.1994) (consecutive sentences inappropriate under *Beno* as marijuana sales were both sponsored by the State and orchestrated by the same police informant); and *Woodard v. State,* 609 N.E.2d 1185, 1187–1188 (Ind.Ct.App.1993), *trans. denied* (consecutive sentences inappropriate under *Beno* as crimes arose from police sting which involved multiple buys to the same individual on consecutive days).

■ As a result, we conclude that the trial court's imposition of consecutive sentences in this instance contravenes the Indiana Supreme Court's directive in *Beno* [4] and *Gregory* and is hereby reversed.[5]

## II.

### *Admission of Evidence*

■ Next, Hopkins contends that the trial court erred in admitting evidence of his prior bad acts. The trial court has the broad discretion in ruling on the admissibility of evidence and in determining its relevancy. We will disturb its ruling only upon a showing of an abuse of discretion. *Kremer v. State,* 514 N.E.2d 1068, 1073 (Ind.1987). Relevant evidence is not inadmissible merely because it is prejudicial. *Id.*

Hopkins argues that the trial court erred by allowing Frederick to testify that he and Hopkins were previously involved in the transport of marijuana. Hopkins contends that this testimony violated a motion in limine granted by the trial court that excluded evidence of his prior bad acts pursuant to Ind. Evidence Rule 404(b).

■■ The granting of a motion in limine by the trial court is not a final ruling on the admissibility of evidence. *Wright v. State,* 593 N.E.2d 1192, 1194 (Ind.1992), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 540. The purpose of the ruling is to prevent presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the trial context. *Id.* Thus, the fact that the trial court granted Hopkins' motion in limine and then admitted evidence contrary to the motion, does not, by itself, constitute reversible error. Instead, we must examine the evidence in the context of the trial.

Hopkins contends that Frederick's testimony violated Ind. Evidence Rule 404(b). This rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be

---

4. The State argues that this case is distinguishable from *Beno* because the trial court did not impose the maximum sentence for a class B felony. IND.CODE § 35–50–5–2 (1993) provides that a person who commits a class B felony shall be imprisoned for a term of ten years with not more than ten years added for aggravating factors and no more than four years subtracted for mitigating factors. Here, the trial court imposed a six year sentence for each count based upon mitigating factors of Hopkins' health and age as well as the hardship on his family. However, the fact that the trial court did not impose the presumptive sentence does not render *Beno* and

*Gregory* inapplicable. *See Robertson, supra,* at 1185.

5. We further note that when a court imposes consecutive sentences, it must state reasons for selecting the sentence imposed. *Grimes, supra,* at 265. Here, neither the transcript of the sentencing hearing nor the trial court's sentencing order reveal any articulable reasons supporting the imposition of consecutive sentences. While the court did set forth three mitigating factors, it offered no explanation justifying consecutive sentences.

admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

▮ Whenever the State attempts to introduce evidence of instances of the defendant's uncharged misconduct, the trial court must look to see whether that evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime. *Bolin v. State,* 634 N.E.2d 546, 548 (Ind.Ct.App.1994)(citing *Hardin v. State,* 611 N.E.2d 123, 129 (Ind.1993)(referring to Fed. Evid. R. 404(b)), the predecessor to our rule). If evidence is offered only to produce the "forbidden inference"—that the defendant acted badly in the past, and that the defendant's present, charged actions conform with those bad acts—then the evidence is inadmissible. *Id.*

Here, during the State's redirect examination of Frederick, the State questioned Frederick about when he started dealing drugs as well as when he started transporting marijuana. He replied, "Uh, Paul told me if I, since I knew the guy that Terry was selling it to, if I could get around him he could get me all the weed I wanted, and we could all make better money because Terry didn't pay very good." Record at 439. Following a recess, Frederick finished the answer to the State's question and stated, "Like I said, I was haulin' it for Terry Wireman, and, uh, Paul sold it to him and Paul came and said that if I could get around Terry and get to these dealers, that he could supply . . . all the dope." Record at 464.

Hopkins argues that the admission of this testimony violated Evid. R. 404(b) [6] as "the only purpose of the testimony was to pollute the jury with the idea that [he] had a bad character and had a tendency to commit crimes." Appellant's Br. at 20. However, a review of the record reveals that on cross-examination, after the State stipulated that Frederick was a marijuana dealer, defense

counsel specifically questioned Frederick about his drug customers in New York and Chicago and that he used to sell a great deal of marijuana to these customers. She further questioned Frederick about how he acquired these connections and he indicated that he used to haul drugs "for a guy who had all the connections." Record at 430. Frederick also testified that he did not want to give the police the names of these individuals out of fear of being killed but stated that he gave the police Hopkins' name to keep himself out of trouble and because Hopkins had "snitched" on people in the past.

▮ Once a party raises a subject on cross-examination, it is permissible for the opposing party to pursue that subject on redirect examination. *Dixon v. State,* 621 N.E.2d 1152, 1155 (Ind.Ct.App.1993). A defendant may not open an issue and have it closed at his convenience. *Kalady v. State,* 462 N.E.2d 1299, 1309 (Ind.1984). Here, even after the State stipulated that Frederick was a drug dealer, defense counsel questioned Frederick about his prior drug trafficking, his supplier, and his connections in Chicago. Thus, this issue was subject to reexamination by the State.

Moreover, Frederick's references to his former drug supplier and Hopkins were not offered for the only purpose of showing that Hopkins acted badly in the past and that these prior acts proved he committed the charged crimes. Instead, this evidence was offered in response to defense counsel's implication that Frederick was an established drug dealer who acted as a police informant not only to retaliate against Hopkins but also to help himself. Because this evidence was not introduced solely to produce the "forbidden inference" proscribed by Evid. R. 404(b), its admission was not in error.

### III.

### *Sufficiency of the Evidence*

▮ Finally, Hopkins contends that there was insufficient evidence to support his

---

**6.** The State counters that Hopkins failed to object to the admission of this evidence on these grounds and thus has waived appellate review of this issue. However, our review of the record reveals that defense counsel initially objected to this evidence based upon hearsay and the trial court overruled the objection. Defense counsel

objected to further testimony on the ground that it violated the motion in limine and was irrelevant. Because defense counsel lodged an objection in reference to this evidence, there is no waiver and we address the merits of Hopkins' claim.

conviction for dealing in a schedule II controlled substance arising from the November 5, 1993 incident. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh. denied.* We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.*

Hopkins argues that there is no evidence to prove that he knowingly and intentionally delivered the Vicodin tablets to Frederick. He contends that the evidence presented at trial presents the question of whether he delivered a controlled substance to Frederick or merely returned Frederick's own prescription.

IND.CODE § 35-48-4-2(a) provides that a person who knowingly and intentionally delivers a controlled substance classified in schedule II commits dealing in a schedule II controlled substance, a class B felony. IND. CODE § 35-48-1-11(1993) defines delivery as "an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship . . ."

A review of the record reveals that on November 5, 1993, Frederick met with members of the drug task force, was given $400.00, and then traveled with Hopkins to the Fagen Pharmacy in Crown Point, Indiana. He testified that he and Hopkins went into the pharmacy where Hopkins bought the Vicodin pills. They returned to Hopkins' home where Hopkins took the pills out the prescription bottle, dumped them back in to the white Fagen Pharmacy bag, and handed Frederick the bag. Frederick left, met the police, and turned over the pills and $79.00. Fagen pharmacist, Terry Costakis, also testified that the pharmacy's prescription records show that on November 5, 1993, Hopkins paid $321.00 in exchange for 240 Vicodin pills. Finally, Officer David Walters, project director of the drug task force, indicated that through the body wire worn by Frederick, he heard Frederick and

Hopkins inside Hopkins' house after they returned from the pharmacy and listened to Hopkins count out the pills. Walters then met with Frederick and Frederick gave him the white Fagen Pharmacy bag containing 240 Vicodin pills and the excess $79.00. This evidence sufficiently supports the jury's determination that Hopkins knowingly and intentionally delivered a schedule II controlled substance on November 5, 1993.

Accordingly, we affirm the trial court's judgment finding Hopkins guilty of two counts of dealing in a schedule II controlled substance and as indicated in Issue I *supra,*; we reverse the trial court's imposition of consecutive sentences and remand this cause for reconsideration of Hopkins' sentence.

Affirmed in part, reversed in part, and remanded.

HOFFMAN and RILEY, JJ., concur.