Nelson RIOS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0912–CR–1273.

Court of Appeals of Indiana.

July 28, 2010.

David P. Freund, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Nelson Rios appeals the trial court's order that he serve consecutive sentences for his conviction, after a jury trial, on two counts of dealing in a look-alike substance, class C felonies.

We reverse and remand.

*ISSUE*

Whether the trial court's order that Rios serve consecutive sentences on the two counts of dealing in a look-alike substance is inappropriate.

*FACTS*

In August of 2009, an Indianapolis Metropolitan Police ("IMPD") officer advised Detective Jamie Guilfoy of the IMPD that a confidential informant named Demetrius Graves would be willing to make a drug buy for IMPD. In mid-August, Guilfoy met with Graves, who "told [him] he could buy ... amounts of cocaine from" Rios, who "was involved in the trafficking of cocaine." (Tr. 47).

On September 1, 2009, Guilfoy and other officers met with Graves to arrange a controlled drug buy. Graves called Rios and arranged to meet at a restaurant to purchase one-half ounce of cocaine for $485.00. Guilfoy searched Graves and his vehicle, confirmed that Graves had no money or drugs, and then provided Graves with $485 in pre-recorded buy money to purchase the cocaine. Rios arrived as scheduled, walked to Graves' driver's side window, made a hand-to-hand exchange with Graves, and then left the area.

Guilfoy followed Graves' vehicle to a nearby meeting place. There, Graves handed Guilfoy the plastic bag containing an off-white rock-like substance that he had obtained from Rios; Guilfoy again searched Graves and his vehicle; and Guilfoy gave Graves $100.00 "for his service." (Tr. 80). Guilfoy sent the bag containing

what he believed to be one-half ounce of cocaine to the crime laboratory for testing.

One week later, on September 8, 2009, consistent with the general procedure of conducting "at least two (2), three (3) buys off the individual, so it shows a pattern," (tr. 64), Graves and Guilfoy met again; Graves called Rios and arranged for another buy at the same restaurant. Graves was again searched, then given $485 in pre-recorded buy money. Graves met Rios and again engaged in a hand-to-hand transaction. Guilfoy again followed Graves. At the meeting place, Graves handed him "the white package" that "he had purchased from Mr. Rios," (tr. 67), and Graves and his vehicle were searched. Guilfoy returned to his office, and sent the substance purchased from Rios for laboratory testing.

The next day, September 9, 2009, Guilfoy learned that the substances obtained from Rios on September 1st and September 8th were *not* cocaine but a look-alike substance. Guilfoy located Graves, had Graves arrange to meet Rios, and placed Graves under surveillance. When Graves picked up Rios, Guilfoy ordered a traffic stop of Graves' vehicle. Officers arrested Graves and Rios. The search of Rios incident to his arrest found a purple Crown Royal bag tucked into the waistband of his pants. The bag contained two plastic bags of a look-alike substance and a bag of marijuana. The search of Graves incident to his arrest found in his shoe more than $500 of the pre-recorded buy money given to Graves by Guilfoy to make the two buys of cocaine.

On September 15, 2009, the State charged Rios with ten counts: two counts of conspiracy to commit dealing in a look-alike substance, a class C felony; two counts of dealing in a look-alike substance, a class C felony; two counts of theft of police department funds, a class D felony; three counts of possessing a look-alike substance, a class C misdemeanor; and possession of marijuana, a class A misdemeanor.[1] On October 30, 2009, Rios moved to be tried separately from Graves,[2] and the motion was granted on November 12, 2009.

On November 18, 2009, a jury trial was held, and the above evidence was heard. The jury found Rios guilty on all ten counts. Merging several counts, the trial court entered judgment of conviction on only six counts: two counts of dealing in a look-alike substance, a class C felony; two counts of theft, a class D felony; one count of possession of marijuana, a class A misdemeanor; and one count of a possessing a look-alike substance, a class C misdemeanor.

On December 1, 2009, the sentencing hearing was held. The trial court noted twenty-nine year old Rios' "lengthy juvenile history," and that his adult criminal

1. One count of conspiracy to commit dealing in a look-alike substance, a class C felony; one count of dealing in a look-alike substance, a class C felony; and one count of possessing of a look-alike substance, a class C misdemeanor were allegedly committed on September 1, 2009; and one count of conspiracy to commit dealing in a look-alike substance, a class C felony; one count of dealing in a look-alike substance, a class C felony; and one count of possessing of a look-alike substance, a class C misdemeanor were allegedly committed on September 8, 2009. The third charge of possessing a look-alike substance, a class C misdemeanor, and the charge of marijuana possession, a class A misdemeanor, were allegedly committed on September 9, 2009.

2. The September 15, 2009, charging information had also charged Graves with two counts of conspiracy to commit dealing in a look-alike substance, a class C felony; two counts of dealing in a look-alike substance, a class C felony; two counts of theft, a class D felony; and two counts of possessing a look-alike substance, a class C misdemeanor.

history began when Rios was seventeen. (Tr. 258). The trial court then found Rios' "criminal history, including seven prior felony convictions as well as just recently coming off of parole at the time of this offense, to be aggravating circumstances," and that there were "no mitigating circumstances in this matter." (Tr. 262). The trial court ordered Rios to serve a five-year sentence for each dealing in a look-alike conviction, and "[b]ased on aggravating factors, that those sentences shall run consecutive[ly]." (Tr. 263). The trial court sentenced Rios to serve concurrently the advisory 1½-year terms for each of the two class D felony theft convictions, a one-year term for the class A misdemeanor possession of marijuana conviction, and sixty days for the class C misdemeanor possessing a look-alike substance conviction. Thus, an aggregate ten-year sentence was imposed.

### DECISION

Citing *Beno v. State,* 581 N.E.2d 922 (Ind.1991), *Gregory v. State,* 644 N.E.2d 543 (Ind.1994), and *Hopkins v. State,* 668 N.E.2d 686 (Ind.Ct.App.1996), *trans. denied,* Rios argues that

> ordering [him] to serve his sentences for two counts of dealing a look-alike substance consecutive to each other is inappropriate where both convictions were based upon incidents that were virtually identical, the buys occurred within one week of each other, were sponsored by the police, using the same police informant, and both involved the attempted purchase of cocaine and the delivery of the same look-alike substance.

Rios' Br. at 11. We agree.

After he participated in two cocaine sales to a confidential informant, Beno was convicted of two counts of dealing in cocaine—one as an A felony (for an amount exceeding 3 grams), and one as a B felony (for an amount under 3 grams)—and one count of maintaining a common nuisance, a class D felony. The trial court

> ordered that Beno receive the maximum sentence and the maximum possible fine for each of the three violations, and that the sentences be served consecutively. . . .

581 N.E.2d at 924. Thus, Beno "was sentenced to a total of 74 years imprisonment and $30,000 of fines." *Id.* at 923.

After expressly noting that the trial court held "discretion to both aggravate a sentence to its maximum amount and determine that the sentences should run consecutively," our Supreme Court held that "in this case, such [wa]s not appropriate." *Id.* at 924. The court reasoned as follows:

> Beno was convicted of committing virtually identical crimes separated by only four days. Most importantly, the crimes were committed as a result of a police sting operation. As a result of this operation, Beno was hooked once. The State then chose to let out a little more line and hook Beno for a second offense. There is nothing that would have prevented the State from conducting any number of additional buys and thereby hook Beno for additional crimes with each subsequent sale. We understand the rationale behind conducting more than one buy during a sting operation, however, we do not consider it appropriate to then impose maximum and consecutive sentences for each additional violation. If Beno, for instance, had sold drugs to different persons, or if he had provided a different type of drug during each buy, the consecutive sentences might seem more appropriate.

*Id.* The court then concluded that "because the crimes committed were nearly identical State-sponsored buys, consecutive sentences were inappropriate." *Id.* It ordered his sentence to be "the maximum term for

**668**

each of the three offenses, 50 years for the class A felony, 20 years for the B felony, and 4 years for the D felony, ... served concurrently, ... a total sentence of 50 years." *Id.*

Gregory was "convicted of four counts of selling cocaine to the same police informant," and "sentenced to the presumptive term of thirty years on each count, to be served consecutively." 644 N.E.2d at 546. *Id.* at 546. Our Supreme Court noted that

[a]s in *Beno,* Gregory sold the same drug to the same informant on several occasions over a short period of time. Presumably, the police could have set up any number of additional transactions against Gregory. While the police may find it necessary to conduct a series of buys, the trial court should be leery of sentencing a defendant to consecutive terms for each count.

*Id.* Accordingly, the court held "that on these facts, a sentence of 120 years was inappropriate." *Id.* It ordered Gregory sentenced to "one enhanced term of fifty years" on the first count, with "three presumptive terms of thirty years" for the other three counts, "to run concurrently." *Id.*

Hopkins was convicted of two counts of dealing in a controlled substance. Addressing his argument that his consecutive ten-year presumptive sentences warranted appellate revision, we reviewed the reasoning of *Beno* and *Gregory.* 668 N.E.2d at 688–89. We then noted that Hopkins' convictions had resulted from two drug deals "within one week of each other," both of which "were sponsored by the State with the use of the same police informant, and ... involved prescription painkillers." 668 N.E.2d at 689. We further noted that following *Beno,* we had "repeatedly determined that the imposition of consecutive sentences in similar circumstances was improper." *Id.* (citing *Robertson v. State,*

650 N.E.2d 1177, 1185 (Ind.Ct.App.1995), *disapproved on other grounds,* 658 N.E.2d 563 (Ind.1995); *Grimes v. State,* 633 N.E.2d 262, 265–66 (Ind.Ct.App.1994); *Woodard v. State,* 609 N.E.2d 1185, 1187–88 (Ind.Ct.App.1993), *trans. denied*). Finding "the trial court's imposition of consecutive sentences" to contravene *Beno* and *Gregory,* we reversed "the trial court's imposition of consecutive sentences and remand[ed] ... for reconsideration of Hopkins' sentence." *Id.* at 689, 691.

■ The State appears to argue that Rios' circumstances are critically different from *Beno* and *Gregory* in that here, the "sting operation" was undertaken by Graves and Rios. State's Br. at 9. We find such to be a distinction without a difference. There could have been no sting operation here without the active participation of the police. Moreover, the sale of a look-alike substance to an agent of the police is certainly a lesser danger to society than its sale to a man on the street.

The State reminds us that unlike in *Beno,* the trial court did not sentence Rios to the "maximum consecutive sentences on all counts." *Id.* It is true that the only sentences ordered to be served consecutively were the five-year terms for the two class C felony dealing convictions, each of which could have resulted in a maximum sentence of eight years. *See* I.C. § 35–50–2–6 ("a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years" for a C felony conviction). However, in *Gregory,* the trial court's order that the defendant serve "the presumptive term of thirty years on each count, ... consecutively" was held to be "inappropriate." 644 N.E.2d at 544, 546. Furthermore, in *Hopkins,* we reversed the sentence ordering the defendant to serve consecutively the "ten year presumptive sentence" on two counts. 668 N.E.2d at 688.

Rios was convicted of two virtually identical drug deals—arranged and coordinated by the police; between Rios and the same police agent, Graves; for the same amount of the same purported substance; at the same price; at the same meeting place; and within a seven-day period. Although never discussed at trial, we note the apparent lack of even any limited field-test of the off-white rock-like substance sold by Rios on September 1st. Had such a test been conducted, surely there would not have been a second buy arranged, and Rios would not have been subject to the resulting second charge and conviction. We find, as we did in *Hopkins*, that "the imposition of consecutive sentences in this instance contravenes" the long-standing "Indiana Supreme Court directive in *Beno* and *Gregory*." 668 N.E.2d at 689. Accordingly, the order sentencing Rios to serve consecutive sentences is reversed. *Id.*

When we find an irregularity in the trial court's sentencing decision, we may remand to the trial court for a clarification or a new sentencing determination, or affirm the sentence if the error is harmless, or impose a proper sentence. *Merlington v. State*, 814 N.E.2d 269, 273 (Ind.2004). We elect to remand to the trial court for a new sentencing determination. We express no opinion as to the sentence to be imposed, but we note that in resentencing Rios to serve concurrent terms on the dealing a look-alike convictions, the trial court retains its right to enhance the advisory term based on any factors it finds applicable.

Reversed and remanded.

BAKER, C.J., and CRONE, J., concur.