## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 06 2019, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephen Boger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 6, 2019

Court of Appeals Case No.
18A-CR-2622

Appeal from the Greene Superior Court

The Honorable Dena A. Martin, Judge

Trial Court Cause No.
28D01-1705-F4-10

**Robb, Judge.**

## Case Summary and Issues

[1] Following a two-day jury trial, Stephen Boger was convicted of one count of Level 4 felony dealing in methamphetamine and three counts of dealing in methamphetamine as Level 5 felonies. He was sentenced to ten years for the Level 4 felony and four years each for the Level 5 felonies, with the sentences to be served consecutively in the Indiana Department of Correction. Because his sentenced was capped at fifteen years pursuant to statute,[1] the trial court sentenced him to total of fifteen years. Boger now appeals, raising several issues which we restate as follows: (1) whether the trial court abused its discretion in admitting evidence, (2) whether there was sufficient evidence to support his convictions; and (3) whether the trial court erred in imposing consecutive sentences. Concluding that the trial court did not abuse its discretion in admitting evidence and the State presented sufficient evidence to support Boger's convictions, but that the trial court did err in imposing consecutive sentences, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] Boger's acquaintance, D.D., was serving a term of probation for the misdemeanor offense of operating while intoxicated. He agreed to work as a confidential informant after police officers found marijuana and a syringe at his

---

[1] *See* Ind. Code § 35-50-1-2(d)(3).

home during an unannounced probation search. The officers asked D.D. to suggest names of individuals from whom he believed he could purchase methamphetamine, and D.D. suggested Boger because D.D. had "bought [methamphetamine] from him personally in the past." Transcript of Evidence, Volume II at 200.

[3] Working as a confidential informant, D.D. arranged two separate controlled buys from Boger. The first occurred on March 8, 2017. D.D. called and sent numerous text messages to Boger and the two agreed that D.D. would travel to Boger's house to purchase two grams of methamphetamine for the negotiated price of $200.00. However, D.D. did not have access to transportation; so, police officers arranged to transport him to an area near Boger's house and allow him to walk the rest of the way to complete the transaction. Prior to doing so, however, the officers searched D.D. to ensure that he was not already in possession of contraband. The officers then provided D.D. with $200.00 in pre-recorded buy money and a digital recording device. After being dropped off, D.D. walked to Boger's house, entered, and proceeded to purchase methamphetamine from Boger. He exited the house with a plastic baggie containing what was later determined to be 2.52 grams of methamphetamine that had been cut with Dimethazone, a dietary supplement.

[4] The second controlled buy between D.D. and Boger occurred on March 20, 2017. As with the previous buy, police officers searched D.D. and provided him with a recording device and $200.00 in buy money to purchase two grams of methamphetamine. The officers then dropped D.D. off near Boger's house,

and D.D. walked the rest of the way to complete the transaction. However, when D.D. arrived, Boger told him that he was unable to obtain "that much" methamphetamine. *Id.* at 165. D.D. gave Boger $100.00 and then left, agreeing to meet Boger later, at a predetermined location, to pick up whatever amount of methamphetamine Boger could obtain. As D.D. walked back to where the police officers were waiting, Boger drove up beside D.D. in a minivan and told D.D. that he would "text or call [D.D.] as soon as he got [the methamphetamine]." *Id.* at 167.

[5] D.D. waited with the officers for Boger's call, which came approximately one-half hour later. D.D. suggested that he and Boger meet in the parking lot of a local business. The officers drove D.D. to the parking lot. When they arrived, Boger was waiting in his vehicle. D.D. then exited the officers' van and walked to Boger's vehicle window. Boger handed him what was later determined to be .89 grams of methamphetamine that had been cut with Dimethazone. The controlled buys between Boger and D.D. were recorded.

[6] Boger also twice sold methamphetamine to another confidential informant, P.W. P.W. agreed to act as a confidential informant when he was pulled over by law enforcement officers for committing a traffic infraction after he was observed visiting the house of a suspected methamphetamine dealer. During the stop, the officers discovered that P.W. had three grams of methamphetamine in his vehicle. P.W. suggested Boger as an individual from whom he could purchase methamphetamine because P.W. had purchased methamphetamine from Boger in the past.

[7] The first controlled buy with P.W. occurred on April 13, 2017. P.W. exchanged text messages with Boger and arranged to meet Boger in the parking lot of a tobacco store to purchase $50.00-worth of methamphetamine. P.W. first met with police officers, who searched his person and his vehicle and then provided him with the buy money and a recording device. P.W., under constant surveillance by the officers, drove to the tobacco store and parked his vehicle next to Boger's. He then exited his vehicle, entered Boger's vehicle, and purchased what was later determined to be methamphetamine. P.W. then drove back to where he had first met with the officers and gave them the methamphetamine he had purchased from Boger.

[8] P.W. next arranged to purchase $50.00-worth of methamphetamine from Boger on April 17, 2017. This time, Boger told P.W. to meet him at his house. Prior to travelling to Boger's house, P.W. met with police officers. The officers searched P.W.'s person and his vehicle and then provided P.W. with the buy money and a recording device. P.W., again under constant surveillance by the officers, drove to Boger's house, entered, and purchased what was later determined to be methamphetamine. After the transaction was completed, but before P.W. left Boger's house, Boger asked P.W. for some of the methamphetamine he had just sold to P.W. P.W. obliged, and Boger placed some of the methamphetamine in a pipe and consumed it. P.W. eventually left Boger's house, met with the officers, and provided them with what was left of the methamphetamine he had purchased. The transactions that occurred between Boger and P.W. were recorded.

On May 24, 2017, the State charged Boger with one count of dealing in methamphetamine as a Level 4 felony and three counts of dealing in methamphetamine as Level 5 felonies. The next day, law enforcement officers executed a search warrant they had obtained for the search of Boger's house. They found digital scales, broken glass pipes, three cell phones, and a jar that contained MSM – "a [non-controlled] substance" with a similar appearance to crystal methamphetamine "that people use to cut their methamphetamine with in order to make more money and make a small amount of meth go a little further [sic] when they're selling it." Tr., Vol. III at 53.

Prior to the start of Boger's trial, a number of pretrial matters were addressed. On May 30, 2017, the trial court issued a pretrial order that (among other things) directed the State to provide the defense with notice of any Indiana Rule of Evidence 404(b) evidence "the State intend[ed] to introduce at trial" no later than ten days prior to the final pretrial conference, which was scheduled to be held on August 20, 2018. Appellant's Appendix, Volume II at 42. It does not appear from the record that the State did so; however, it does appear that Boger's counsel was at least aware that the State intended to introduce evidence of Boger's prior conviction for maintaining a common nuisance. At the final pretrial conference, Boger's counsel informed the court that he had "filed with the State of Indiana the defense of entrapment," and it was defense counsel's understanding that:

> the Prosecutor has secured a transcript from Circuit Court regarding a previous plea made by [Boger in a separate case from 2010 where he was convicted of maintaining a common

nuisance]. The case law appears to allow them to do so, but I may file something regarding that, also. I want to make sure that case law is still current. I still may file something regarding the State's ability to raise that at trial, your honor.

Tr., Vol. II at 16.

[11]     On August 31, 2018, Boger filed a motion in limine, pursuant to Evidence Rule 404(b), arguing (among other things) that the State should be prevented from introducing evidence of his previous conviction for maintaining a common nuisance. On September 5, 2018, the State filed its response, stating in relevant part that it "expect[ed] [Boger] to present the defense of entrapment[;]" that it "intend[ed] to rebut that [Boger's] decision to sell drugs was the product of police inducement[;]" and that "the evidence [Boger] is attempting to keep out[, i.e., his 2010 conviction for maintaining a common nuisance,] is directly related to [his] predisposition to sell controlled substances and should be allowed into evidence." Appellant's App., Vol. II at 84. Boger's motion was addressed on September 11, 2018, the first day of Boger's two-day trial, when the trial court entertained additional arguments from the parties.

[12]     In support of its argument, the State asserted that if Boger raised the defense of entrapment at trial, it should be allowed to introduce evidence of:

> [Boger's] previous conviction [for maintaining a common nuisance] which . . . should come in because there's several factors a jury can consider in determining whether or not the defendant has a predisposition to deal drugs, if that entrapment defense is raised. One of those factors are, previous convictions – where controlled substances were delivered. And, . . . defendant

indicated that he delivered a controlled substance to a friend. I believe that was morphine. So, that should be something the jury should be allowed to consider to determine the defendant's predisposition – dealing controlled substances.

Tr., Vol. II at 117-18. Defense counsel countered that the probative value of the evidence was outweighed by the prejudicial effect. The trial court ruled that the State would be allowed to present evidence of the prior conviction "if the defense of entrapment is raised." *Id.* at 122.

[13] Prior to giving its opening statement, the State asked for a brief sidebar to make defense counsel aware that it intended to introduce evidence that both confidential informants, D.D. and P.W., had previously bought methamphetamine from Boger. The sidebar was granted and the following colloquy occurred:

> [STATE:] . . . One of the issues in this case is, is potentially entrapment. But, but also how the CI, confidential informants came to buy from Mr. Boger specifically. And, one of the reasonings behind that is that both of them have bought methamphetamine from Mr. Boger previously. And they're both prepared to testify to that fact. I understand that could also be construed as a prior ba[d] act and I wanted to get defense counsel a preview of that prior to going ahead and arguing that in front of the jury and previewing that evidence during opening statement. The State would argue that evidence is inextricably intertwined to how the CI's came to buy from Mr. Boger and why we're all here in the first place. So, the State would argue that evidence should come in because there's no way to explain why they bought from Mr. Boger without going into that detail. And, I think the jury's going to have too many questions if they're not allowed inside into that detail.

BY THE COURT: And, [defense counsel], do you wish to be heard?

[DEFENSE COUNSEL]: I guess I would ask the question the State for ought [sic] to be heard, your honor. Did the State, under the discovery order, specifically, under 404(b) provide information that it intended to present that here today?

[STATE]: I believe counsel was on notice through the previous depositions that the State and defense counsel entered in to [sic].

[DEFENSE COUNSEL]: Well, I guess, what I'm asking specifically under the discovery order, were specifically 404(b), did you set that out in your discovery?

[STATE]: No.

[DEFENSE COUNSEL]: I'm going to objection [sic] to this evidence coming in. First of all, it was not set out under the requirement that the court has regarding discovery for purposes of 404(b). It is clearly allegations of bad acts, crimes, offenses that allegedly took place prior to the issues that are before the court or before the jury here today, your honor. It is prejudicial to my client for that evidence to be introduced at this particular time, even though [sic] a, an opening statement. I have talked to or spoken with the State and, of course, we've had argument already about what happens if we choose to introduce an entrapment defense at this stage of the trial, this has not been done. And until we do so, then certain things should not be allowed just as, for instance, the prior conviction, that the State alleges that my client has for maintaining a common nuisance. I would argue respectfully to the court, that this falls in line with, with that issue, also. Because, again, of the prior bad act is what they're alleging. Now, the case laws appears to be settled. And if we did in fact offer an, an entrapment, there are certain things

that be brought out, including some prior criminal offenses, convictions, acts. So, I would argue at this particular point in time, it points to the jury is not appropriate, the State should not be allowed to discuss it in the opening statement. I do appreciate Mr. Prosecutor your fairness and willingness to bring that to our attention prior to the opening statement.

*Id.* at 134-36. The trial court determined that evidence of previous drug sales could not be introduced until Boger "opened the door with the entrapment" defense. *Id.* at 136.

[14] Later, at trial, defense counsel cross-examined D.D., posing questions regarding the circumstances under which D.D. become a confidential informant, the number of times D.D. contacted Boger to set up the controlled buys, and whether Boger was coerced into selling methamphetamine to D.D. When cross-examination concluded, the State asked for an evidentiary ruling outside the presence of the jury, argued that defense counsel had raised the entrapment defense through his cross-examination of D.D., and requested permission to question D.D. and P.W. about prior drug sales with Boger. The trial court determined that the entrapment defense had been raised and allowed the State to question D.D. and P.W. about the prior drug transactions.

[15] Boger's trial proceeded, following which a jury found Boger guilty as charged. On October 11, 2018, the trial court sentenced Boger to ten years for the Level 4 felony conviction and four years each for the three Level 5 felony convictions. The sentences were ordered to be served consecutively, in the Indiana Department of Correction, subject to a statutory cap that limited the aggregate

sentence to fifteen years. *See* Ind. Code § 35-50-1-2(d)(3). Boger now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Abuse of Discretion

[16] Boger contends the trial court abused its discretion when it admitted evidence of his prior drug sales to D.D. and P.W., his previous conviction from 2010 for maintaining a common nuisance, and his reliance on an entrapment defense in the 2010 case. We address each of Boger's evidentiary arguments in turn.

### A. Standard of Review

[17] A trial court has broad discretion in ruling on the admissibility of evidence. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). We review its rulings for abuse of discretion, which occurs only if the decision was clearly against the logic and effect of the facts and circumstances. *Id.*

### B. Admission of Evidence of Prior Drug Sales

[18] Boger first argues the trial court abused its discretion in admitting evidence of his prior drug sales to the confidential informants. Boger claims the evidence was inadmissible under Evidence Rule 404(b) because "the prior misconduct evidence was offered solely to show Boger's bad character and that he acted in conformity with that bad character with respect to the charged offenses." Brief of the Appellant at 10. He further argues that even if the evidence is admissible

under Rule 404(b), it is inadmissible under Indiana Rule of Evidence 403 because "its prejudicial impact far exceeded its probative value." *Id.*

The State argues that Boger's claim of error is waived because he failed to make a contemporaneous objection at the time the evidence was introduced at trial. In his reply brief, Boger maintains that when the State sought permission to introduce the evidence at trial, he "specifically objected to such evidence as inadmissible[,]" and that once the court ruled that the evidence was admissible on grounds that Boger had raised the entrapment defense, Boger "had no further obligation to repeat his objection." Reply Brief of the Appellant at 5. We find that Boger preserved for appeal his claim regarding the evidence of his prior drug sales.

### 1. Waiver

To preserve a claim of evidentiary error for purposes of appeal, a defendant must make a contemporaneous objection at the time the evidence is introduced. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (citing *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000)). This is true regardless of whether the appellant filed a pretrial motion seeking to exclude the evidence in question. *Id.* "The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors." *Id.*

Here, at the time the State sought permission from the trial court to introduce the evidence in question, Boger objected; arguments on the matter were heard from both parties; and the trial court definitively ruled that the evidence was

admissible. Boger's objection at trial on the merits preserved the matter for appeal. As such, Boger did not need to renew the objection. *See* Ind. Evidence Rule 103(a)(1), -(b) (providing that a "party may claim error in a ruling to admit . . . evidence only if . . . the party . . . , on the record[,] . . . timely objects . . . and . . . states the specific ground" for the objection, and that "[o]nce the court rules definitively on the record at trial a party need not renew an objection or offer of proof to preserve a claim of error for appeal"); *see also K.G. v. State*, 81 N.E.3d 1078, 1080 n.5 (Ind. Ct. App. 2017) (noting that the defendant preserved his claim of evidentiary error by renewing his pretrial objection at the time the evidence was admitted, giving the trial court the opportunity to definitively rule on the record per Evidence Rule 103(b)).

## 2. Admissibility Under Evidence Rules 404(b) and 403

[22] Finding that the claim of error regarding the admission of evidence of Boger's prior drug sales was properly preserved, we address whether the evidence was inadmissible under Evidence Rules 404(b) and 403. Rule 404(b) prohibits the State from presenting evidence of a person's "crime, wrong, or other act" to the extent it is used to prove a person's character and demonstrate on a particular occasion a person acted in accordance with that character. *Id.* The purpose of the rule is to protect against the "forbidden inference – that the defendant acted badly in the past, and that the defendant's present, charged actions conform with those past bad acts. . . ." *Nicholson v. State*, 963 N.E.2d 1096, 1099-1100 (Ind. 2012) (citation and internal quotations omitted). However, evidence of crimes, wrongs, or other acts are admissible if offered for another purpose, such

as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2).

[23] In assessing the admissibility of 404(b) evidence, we (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997). Evidence Rule 403 permits the trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

[24] In *Stoker v. State*, a panel of this court held that an entrapment defense "affirmatively presented a claim of contrary intent, thereby triggering the exception to [Rule] 404(b)." 692 N.E.2d 1386, 1391 (Ind. Ct. App. 1998). Thus, in *Stoker*, we determined that the trial court did not err in allowing testimony concerning the defendant's prior drug sales. *See id.* Similarly, in *Dixon v. State*, a panel of this court held that the defendant's entrapment defense rendered testimony of prior drug transactions "relevant to proving [the defendant's] knowledge and intent to deal in cocaine." 712 N.E.2d 1086, 1089 (Ind. Ct. App. 1999). Here, Boger raised the defense of entrapment during trial, essentially challenging his intent to deal in methamphetamine. In light of *Stoker* and *Dixon*, Boger's entrapment defense placed his intent at issue and

the State was therefore permitted to present the evidence of prior drug sales in order to rebut that defense.

[25] However, even if evidence of a prior bad act is admissible, its probative value must still be weighed against the unfair prejudice that its admission may cause to a defendant. Evid. R. 403; *Jones v. State*, 708 N.E.2d 37, 40 (Ind. Ct. App. 1999), *trans. denied*. To be inadmissible, the prejudicial effect of the evidence must outweigh its probative value. *Burgett v. State*, 758 N.E.2d 571, 580 (Ind. Ct. App. 2001), *trans. denied*. Given Boger's entrapment defense and the State's burden to rebut it, we conclude the probative value of Boger's previous drug sales outweighed the danger of unfair prejudice. Accordingly, Boger has failed to show the trial court abused its discretion in admitting the evidence.

### 3. 404(b) Evidence Prematurely Admitted

[26] Boger next argues that the admission of evidence of his prior drug sales violated Evidence Rule 404(b) because, according to Boger, the trial court admitted the evidence before he "rais[ed] any entrapment defense." Br. of Appellant at 19. We disagree.

[27] Entrapment in Indiana is statutorily defined as follows:

> (a) It is a defense that:
>
> > (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

> (2) the person was not predisposed to commit the offense.
>
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Ind. Code § 35-41-3-9. A defendant does not need to formally plead the entrapment defense; rather, it is raised, often on cross-examination of the State's witnesses, by affirmatively showing the police were involved in the criminal activity and expressing an intent to rely on the defense. *Griesemer v. State*, 26 N.E.3d 606, 609 (Ind. 2015). The State then has the opportunity for rebuttal, its burden being to disprove one of the statutory elements beyond a reasonable doubt. *Id.* In *Townsend v. State*, 418 N.E.2d 554, 559 (Ind. Ct. App. 1981), *cert. denied*, 455 U.S. 992 (1982), this court held that "the defendant must in some manner affirmatively raise the defense of entrapment before rebuttal by the State is either necessary or desired." However, in *Allen v. State*, 518 N.E.2d 800, 802 (Ind. 1988), our supreme court found that "[i]t was not error to admit evidence of appellant's prior convictions once he indicated *an intention* to use an entrapment defense[;]" and that it was "immaterial that [appellant] did not submit such evidence." (Emphasis added.)

[28] At the final pretrial conference, Boger's counsel indicated an intent to use an entrapment defense when he informed the trial court that he had "*filed with the State of Indiana the defense of entrapment*[.]" Tr., Vol. II at 16 (emphasis added). Counsel then revealed his intention to use the defense during cross-examination of D.D. by posing questions regarding the circumstances under which D.D.

become a confidential informant, the number of times D.D. contacted Boger to set up the controlled buys, and whether Boger was coerced into selling methamphetamine to D.D. Specifically, and in relevant part, counsel questioned D.D. as follows:

> Q  So, right away [police officers are] trying to entice you to work for them or whoever they might catch in this net, would that be fair to say?
>
> A  I guess it would be, yes.
>
> * * * * *
>
> Q  Let's go back and talk about the number of attempts that you've made to try to get this [first drug deal between you and Boger] to work. When I took your deposition, you indicated under oath, sir, that you had contacted Mr. Boger somewhere between 60 to 100 times through text messages. Is that correct, sir?
>
> A  Yes.
>
> Q  And, I believe your testimony a while ago was maybe what?
>
> A  Forty to eighty. . . .
>
> * * * * *
>
> Q  I also [asked the question] . . . , it was clear that Mr. Boger did not want to sell you something. Is that correct, sir?

A  Yes.

Q  And, I asked you, is that fair to say.  And what did you say?

A  I said, yeah.  At that time that we talked, when he, over the phone, he thought I was a CI.

Q  And, my question to you was, and so how many attempts did you have to make until you finally convinced him to do it.  And your response was what, sir?

A  I can't give an exact, I mean, he just eventually, finally agreed to get it for me.

Q  You can't give an exact, but he "eventually, finally agreed to do it."

A  Yes.

Q  That was your response under oath?

A  Yes, it was.

* * * * *

Q  And again, it's very important to the State, to the law enforcement officers that you cooperate, is that true?

A  Yes.

*Id.* at 184, 185, 186-87, 193.

When cross-examination concluded, the State asked for an evidentiary ruling outside the presence of the jury, argued that defense counsel had raised the entrapment defense through his cross-examination of D.D., and then requested permission to question D.D. and P.W. about prior drug transactions with Boger. Defense counsel countered that he did not "use[ ] the word entrap," and, therefore, did not believe he had raised the defense. *Id.* at 196. The trial court ultimately determined, however, that the entrapment defense had "been placed before the jury" and allowed the State to question D.D. and P.W. about the prior drug transactions. *Id.* at 197.

Our review of the record leads us to the conclusion that Boger affirmatively raised the defense of entrapment before the State requested permission to introduce evidence of Boger's prior bad acts. Therefore, the State did not prematurely introduce evidence of Boger's prior misconduct, and the trial court did not violate Evidence Rule 404(b) in admitting the evidence.

### 4. Lack of Notice

Boger's next claim of error is that the State failed to provide him proper pretrial notice of its intent to offer evidence of his prior drug sales. According to Boger, the State's failure to provide the requisite notice rendered the 404(b) evidence inadmissible.

Evidence Rule 404(b) states in relevant part that "[o]n request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence [of a crime, wrong, or other act] that the

prosecutor intends to offer at trial; and (B) do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice." Reasonable notice of intent to offer evidence of other crimes, wrongs, or acts is a prerequisite for admissibility. *Abdul-Musawwir v. State*, 674 N.E.2d 972, 975 (Ind. Ct. App. 1996), *trans. denied*. The defendant has the burden to make a "reasonably understandable and sufficiently clear" request for such notice from the State. *Id.* Moreover, a defendant who is not given notice after making a proper request must object to the State's 404(b) evidence at trial to preserve any error for appeal. *Id.*

[33] It is unclear from the record whether Boger's counsel requested notice from the State. However, on May 30, 2017, the trial court issued a pretrial order that (among other things) directed the State to provide the defense with notice of any Evidence Rule 404(b) evidence "the State intend[ed] to introduce at trial" no later than ten days prior to the final pretrial conference, which was scheduled to be held on August 20, 2018. Appellant's App., Vol. II at 42. It does not appear from the record that the State did so.

[34] At trial, however, defense counsel did object to the admission of the evidence in question, arguing that the State's Evidence Rule 404(b) notice did not "specifically" indicate that the State would ask the two confidential informants about their prior drug purchases from Boger. Tr., Vol. II at 196. Defense counsel conceded that: "In the discovery as to that prior, I would not sit here and suggest to the court that I have not seen information regarding that in my investigation of this case[.]" *Id.* However, counsel maintained: "But, again, I

would argue that under the 404B [sic] without a specific notice by the State of Indiana, they should not be able to present such evidence further." *Id.* The trial court admitted the evidence over Boger's objection.

[35] In *Hatcher v. State*, our supreme court stated, "there is no hard and fast rule governing the time period in which the State should respond to an appropriate request under 404(b)." 735 N.E.2d 1155, 1158 (Ind. 2000) (citation and internal quotations omitted). The court found that the reasonableness of the State's notice does not turn on its relation in time to either the defendant's request for notice or the date of trial; rather, the reasonableness of the notice requires an examination of whether the purpose of the notice provision was achieved based upon the circumstances of a particular case. *Id.* The purpose of the notice requirement in Rule 404(b) "is to reduce surprise and to promote the early resolution of questions of admissibility." *Id.* (citation and internal quotations omitted).

[36] At trial, Boger's counsel conceded that he was aware of the evidence of the prior drug sales and that the State might introduce the evidence at trial. Consequently, because the defense was not surprised by the evidence, the trial court did not abuse its discretion in allowing the State to present the evidence.

## C. Admission of Evidence Related to Prior Conviction

[37] At trial, the State introduced into evidence the transcript from the change of plea and sentencing hearing for Boger's 2010 conviction (pursuant to a guilty plea) of maintaining a common nuisance. Boger was convicted for maintaining

a common nuisance after he admitted to "knowingly maintain[ing] a building or structure that [wa]s used one or more times for unlawfully delivering controlled substances" and to delivering morphine to an acquaintance. State's Exhibit 13 at 4; *see also* Ind. Code § 35-48-4-13(b)(2)(e) (repealed in 2016 and replaced by Ind. Code § 35-45-1-5). At the 2010 hearing, Boger also presented the defense of entrapment. Boger now argues that evidence of his 2010 conviction as well as his reliance on an entrapment defense in the 2010 case should have been excluded under Evidence Rules 404(b) and 403. We find, however, that Boger has waived these arguments because he did not object at trial to the admission of the evidence on such grounds.

[38] Boger's only objection to the introduction of the evidence was based upon whether the State laid a proper foundation for the evidence before requesting its admission. The trial court, apparently finding that a proper foundation was laid, admitted the evidence over Boger's objection.[2] A defendant is limited on appeal to the grounds advanced at trial and may not raise a new ground for objection for the first time on appeal. *Jackson v. State,* 712 N.E.2d 986, 988 (Ind. 1999). As such, Boger has waived his Evidence Rules 404(b) and 403 claims as to this evidence. Moreover, Boger also failed to raise the issue of

---

[2] We note that, at the time Boger's counsel formally objected to the admission of evidence of the prior drug sales, counsel referenced his pretrial opposition to the introduction of evidence of Boger's 2010 conviction, stating: "And until we [raise the entrapment defense], then certain things should not be allowed *just as, for instance, the prior conviction, that the State alleges that my client has for maintaining a common nuisance*." Tr., Vol. II at 136 (emphasis added). However, a passing reference to pretrial opposition to the admission of evidence is not akin to the level of objection necessary to preserve the claim of error on appeal.

fundamental error in his initial appellate brief.[3]  We, therefore, find his claims

of error with respect to Rules 404(b) and 403 entirely waived.  *See Bowman v.*

*State*, 51 N.E.3d 1174, 1179 (Ind. 2016) (finding waiver of fundamental error

claim for failure to raise it in initial appellate brief).

# II. Sufficiency of the Evidence

## A. Standard of Review

[39]   Boger next argues that the State failed to present sufficient evidence to rebut his

entrapment defense.  Boger contends that "[t]he record, as a whole, establishes

as a matter of law Boger was entrapped" and that the State "failed to prove

beyond a reasonable doubt Boger's predisposition to commit the offenses with

which he was charged."  Br. of the Appellant at 22, 23.  In support of his

argument, Boger points to the following:

> One of the officers was with [D.D.] when he sent numerous text
> messages to Boger to arrange the drug purchase.  Police provided
> transportation to [D.D.] to the drug sale locations, oversaw his
> communications with Boger, gave him the money for the two
> drug sales, and confiscated the drugs from [D.D.] immediately
> after the sales.  Similarly, [P.W.'s] two drug deals with Boger
> were orchestrated by police, implemented with money the
> officers provided, and conducted by [P.W.] under the supervision
> of those officers.

---

[3] The "fundamental error exception is extremely narrow[] and applies only when the error constitutes a
blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error
denies the defendant fundamental due process."  *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013) (citation
and internal quotations omitted).

*Id.* at 23 (citations omitted). According to Boger, "[t]he record contains no evidence of any solicitation by Boger of future drug sales[;] Boger never contacted [P.W.] to set up any drug transactions[; and] Boger referenced one drug supplier but did not indicate any generalized knowledge of drug sources and suppliers." *Id.* at 24 (citations omitted).

"We review a claim of entrapment using the same standard that applies to other challenges to the sufficiency of evidence." *Dockery v. State,* 644 N.E.2d 573, 578 (Ind. 1994). We neither reweigh the evidence nor reassess the credibility of witnesses. *Id.* Instead, we look to the probative evidence supporting the verdict and the reasonable inferences drawn from that evidence. *Id.* If we find a reasonable trier of fact could infer guilt beyond a reasonable doubt, we will affirm the conviction. *Id.*

## B. Rebuttal of Entrapment Defense

Entrapment is an affirmative defense that admits the facts of the crime but claims that the act was justified. *See Hoskins v. State*, 563 N.E.2d 571, 576 (Ind. 1990). As noted above, Indiana Code section 35-41-3-9(a) defines entrapment as:

[a] defense that:

> (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

"Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment." I.C. § 35-41-3-9(b). The State may rebut this defense either by disproving police inducement or by proving the defendant's predisposition to commit the crime. *McGowan v. State*, 674 N.E.2d 174, 175 (Ind. 1996).

[42] Our review of the record indicates that the State sufficiently rebutted the defense of entrapment. The evidence of record established that in a 2010 case, Boger was convicted (pursuant to a guilty plea) of maintaining a common nuisance, which involved Boger admitting to delivering morphine to an acquaintance. Boger raised the defense of entrapment in that case. As for the instant offenses, evidence was presented that Boger had a supplier. Boger sold methamphetamine on four different occasions within approximately forty-five days to two different confidential informants, and evidence was presented that Boger had previously sold methamphetamine to the confidential informants. The evidence presented at trial showed no reluctance on Boger's part to sell methamphetamine to the confidential informants. When D.D. was asked at trial whether he had to "convince Mr. Boger to sell [him] methamphetamine," he responded in the negative, stating, "It seemed like he was pretty open about getting it for me." Tr., Vol. II at 152-53. When P.W. was asked if "Boger ever seem[ed] reluctant to sell methamphetamine to [him,]" P.W. replied, "No. . . ." *Id.* at 218. At trial, D.D. testified to a reason why he needed to send so many text messages to Boger to set up the purchase of the methamphetamine, i.e., "I

guess because [Boger] didn't trust me. . . .  Because he had heard that I was a CI in the past." *Id.* at 200.

[43]     Evidence also was presented that during one of the drug sales to P.W., Boger asked for some of the methamphetamine in return for his services, which demonstrated his understanding of how the drug market worked.  When law enforcement officers executed a search of Boger's house, they found an agent used to cut methamphetamine to make the supply of the drug go farther and, thus, increase profits.

[44]     Boger's sufficiency argument asks us to do no more than reweigh the evidence presented by the State.  This we will not do.  The evidence presented by the State was such that a reasonable juror could infer, beyond a reasonable doubt, that Boger willingly participated in the four controlled buys and that he was predisposed to commit the crimes, thus rebutting his entrapment defense.  We, therefore, find there is sufficient evidence of probative value to support Boger's convictions of dealing in methamphetamine.

# III. Sentencing

## A.  Standard of Review

[45]     Finally, Boger contends that the trial court's imposition of consecutive sentences for his convictions of four counts of dealing in methamphetamine was inappropriate under *Beno v. State,* 581 N.E.2d 922 (Ind. 1991), and *Gregory v. State*, 644 N.E.2d 543 (Ind. 1994).  Boger argues that because "the four offenses arose from a series of similar controlled buys orchestrated by the State,

consecutive sentencing was improper." Br. of the Appellant at 26. Boger asks this court to reverse his sentences and remand the matter to the trial court "for entry of concurrent sentences of [ten] years imprisonment, with two years suspended to probation." *Id.*

[46] Article 7, Section 6 of the Indiana Constitution provides this court with the authority to review and revise a criminal sentence. Indiana Appellate Rule 7(B) explains that we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because a trial court's judgment "should receive considerable deference[,]" our principal role is to "leaven the outliers[.]" *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1225 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). We may rely on any factors appearing in the record in making the determination of whether a sentence is inappropriate. *Stokes v. State*, 947 N.E.2d 1033, 1038 (Ind. Ct. App. 2011), *trans. denied*.

# B. Inappropriate Sentence

[47] We agree, and the State concedes, that Boger's sentence is inappropriate in light of *Beno* and *Gregory*. In those cases, the court held it was manifestly unreasonable to impose consecutive sentences for multiple drug dealing convictions where the convictions were based upon nearly identical State-sponsored sales to a police informant as part of an ongoing sting operation. *Beno,* 581 N.E.2d at 924; *Gregory,* 644 N.E.2d at 546.

[48] In *Hopkins v. State*, 668 N.E.2d 686 (Ind. Ct. App. 1996), *trans. denied*, the defendant was convicted of two counts of dealing in a controlled substance based upon incidents which were virtually identical to one another as the buys occurred within one week of each other, were sponsored by the State with the use of the same police informant, and both involved prescription painkillers. We concluded that trial court's imposition of consecutive sentences in that instance contravened our supreme court's directive in *Beno* and *Gregory*. *Hopkins*, 668 N.E.2d at 689. In *Williams v. State*, we held that the principle that "the State may not 'pile on' sentences by postponing prosecution in order to gather more evidence . . . applies equally to convictions arising from evidence gathered as a direct result of the State-sponsored criminal activity." 891 N.E.2d 621, 635 (Ind. Ct. App. 2008). In *Rios v. State,* 930 N.E.2d 664, 669 (Ind. Ct. App. 2010), we held that consecutive sentences for two counts based on almost identical police-sponsored buys was inappropriate.

[49] Here, the record reveals that within the span of approximately forty-five days, Boger sold methamphetamine on four different occasions to two different confidential informants. The controlled buys were arranged and coordinated by the police. The buys involved similar amounts of methamphetamine for similar amounts of money. The lead police investigator for the case testified at trial that the reason multiple buys were performed using different confidential informants was to "eliminate entrapment arguments." Tr., Vol. III at 95. Based upon the foregoing, we conclude, as we did in *Hopkins*, that "the imposition of consecutive sentences in this instance contravenes" the long-standing "Indiana Supreme Court's directive in *Beno* and *Gregory* . . . ." *Hopkins*, 668 N.E.2d at 689 (footnote omitted). Accordingly, the order sentencing Boger to serve consecutive sentences is reversed.

[50] "When we find an irregularity in the trial court's sentencing decision, we may remand to the trial court for a clarification or a new sentencing determination, or affirm the sentence if the error is harmless, or impose a proper sentence." *Rios,* 930 N.E.2d at 669. In the instant case, we elect to remand to the trial court for a new sentencing determination. We express no opinion as to the sentence to be imposed, but we note that in resentencing Boger to serve concurrent terms on the dealing convictions, the trial court retains its right to enhance the advisory term based on any factors it finds applicable.

# Conclusion

[51] The trial court did not abuse its discretion in admitting evidence of Boger's previous drug sales, and there was sufficient evidence to rebut Boger's entrapment defense and support his convictions. However, we reverse his consecutive sentences as inappropriate and remand for the trial court to resentence Boger consistent with this opinion, modify its orders accordingly, and notify the Department of Correction of this change.

[52] Affirmed in part, reversed in part, and remanded.

Baker, J., and Najam, J., concur.