## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 02 2020, 10:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald Earl Menzie,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 2, 2020

Court of Appeals Case No.
19A-CR-2290

Appeal from the Lake Superior Court

The Honorable Salvador Vasquez, Judge

Trial Court Cause No.
45G01-1803-MR-2

**Baker, Judge.**

[1] Ronald Menzie appeals his convictions for Murder[1] and Level 6 Felony Criminal Recklessness.[2] He argues that the trial court erred by admitting autopsy photographs and by refusing to instruct the jury on the lesser-included offense of voluntary manslaughter. Finding no error, we affirm.

## Facts

[2] On March 10 and into the early morning hours of March 11, 2018, Bunita Boyd was hosting a party at her home in Gary. Menzie was the cousin of the father of Boyd's children, and Boyd had known him for nearly two decades. Menzie and some friends came to Boyd's party at some point during the night.

[3] During the party, Boyd began to argue with her ex-boyfriend, Broderick Harbin. Boyd took Harbin's alcoholic beverage away from him because he had a history of "get[ting] crazy" when he drank. Tr. Vol. V p. 231. Harbin hit Boyd's arm, and the two began "tussl[ing]." *Id.* Boyd yelled at Harbin and told him to leave; instead, he sat down in a chair. Menzie was present in the room during this interaction.

[4] Suddenly, Boyd heard a loud popping sound. Her hearing became "muffled," and she looked down and saw that her hand was bleeding because it had been shot. *Id.* at 233. She looked at Menzie and saw him pointing a handgun at Harbin, and then she heard "some more pops." *Id.* at 234. Boyd felt scared

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. § 35-42-2-2.

and pushed Menzie towards the door. Boyd's son heard Boyd say to Menzie, "I can't believe you shot him." *Id.* at Vol. VI p. 102. Menzie left the house, telling Boyd not to "say his name" as he walked out. *Id.* at Vol. V p. 236. Harbin was shot multiple times and died as a result of the injuries. Boyd required medical treatment for the gunshot wound in her hand.

[5] On March 14, 2018, the State charged Menzie with murder, Level 5 felony battery resulting in serious bodily injury, and Level 5 felony battery by means of a deadly weapon. The State also filed a separate information alleging that each offense should be enhanced based on Menzie's use of a firearm. Menzie represented himself during his jury trial that began on July 8, 2019. He requested a jury instruction on the lesser-included offense of voluntary manslaughter; the trial court denied the request. At the close of the trial, the jury found Menzie not guilty of battery causing serious bodily injury and guilty of murder and Level 6 felony criminal recklessness (a lesser-included offense of Level 5 felony battery by means of a deadly weapon). In the second phase of the trial, the jury found Menzie guilty of using a firearm during the commission of murder.

[6] On August 30, 2019, the trial court sentenced Menzie to fifty-eight years for murder, enhanced by twelve years because of the use of a firearm enhancement, and two years for criminal recklessness. The sentences are to be served consecutively, resulting in an aggregate term of seventy-two years imprisonment. Menzie now appeals.

# Discussion and Decision

# I. Admission of Evidence

First, Menzie contends that the trial court erroneously admitted photographs of Harbin's autopsy into evidence.[3] The decision to admit or exclude evidence is within the trial court's sound discretion. *Green v. State*, 65 N.E.3d 620, 630 (Ind. Ct. App. 2016). We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or if it misinterprets the law. *Id.*

Indiana Evidence Rule 403 provides that the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." It is hard to disagree with a contention that graphic autopsy photos are inflammatory and may be prejudicial. But what must be determined is whether the prejudice is unfair and substantially outweighs the probative value of the evidence. Our Supreme Court has noted that "[e]ven gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally." *Amburgey v. State*, 696 N.E.2d 44, 45 (Ind. 1998); *see also Elliott v. State*, 630 N.E.2d 202, 204 (Ind. 1994) (holding that photographs of the victim's heart that had been removed from the victim's body during an autopsy were admissible

---

[3] We acknowledge the State's argument that Menzie did not make specific objections to the admission of these photographs. We choose to address the issue nonetheless.

because a testifying doctor used the pictures "to demonstrate the path of the bullet and the cause of death" and noting that "[t]he fact that a photograph may depict gruesome details of a crime is not sufficient basis for excluding it").

[9]     In this case, the photographs were introduced into evidence during the testimony of the pathologist who conducted the autopsy. The photographs generally helped the jury understand the pathologist's testimony, especially the explanations about the trajectory of the bullets—and how that trajectory demonstrated that Menzie acted with the requisite mens rea for murder. Specifically, the fact that Menzie shot Harbin through the shoulder and towards Harbin's vital organs supports the inference that Menzie acted intentionally or knowingly. Moreover, one of the photos—the only one specifically referenced by Menzie on appeal—also helped to explain why there were four entrance wounds even though the police only recovered three bullet casings.[4] Therefore, while the photographs may have been graphic and somewhat prejudicial, any prejudice was readily outweighed by the probative value of that evidence. As such, the trial court did not err by admitting the photographs into evidence.[5]

---

[4] The trajectory of one bullet indicated that it actually created two separate entrance wounds.

[5] We also note that even if the photographs had been admitted, the error would have been harmless given the substantial independent evidence of Menzie's guilt, particularly Boyd's testimony that she saw Menzie shoot Harbin.

## II. Jury Instruction

Menzie also argues that the trial court erred by refusing to instruct the jury on voluntary manslaughter, which is a lesser-included offense of murder. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004) (finding that voluntary manslaughter is an inherently lesser-included offense of murder). Instruction of juries is within the trial court's sole discretion. *Driver v. State*, 760 N.E.2d 611, 612 (Ind. 2002). A jury must be instructed on a lesser-included offense only if, among other things, there is a "serious evidentiary dispute" about the element(s) distinguishing the greater from the lesser offense. *Webb v. State*, 963 N.E.2d 1103, 1106 (Ind. 2012).

When a person knowingly or intentionally kills another human being while acting under sudden heat, the "existence of sudden heat is a mitigating factor that reduces what would otherwise be murder . . . to voluntary manslaughter." Ind. Code § 35-42-1-3(b). "Sudden heat" is "characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." *Washington*, 808 N.E.2d at 625-26. Where there is no evidence of sudden heat, the State "is not required to prove the absence of sudden heat beyond a reasonable doubt to obtain a murder conviction." *Massey v. State*, 955 N.E.2d 247, 255 n.4 (Ind. Ct. App. 2011).

In this case, there is simply no evidence whatsoever that Menzie acted in sudden heat. The record reveals a moment of tension that occurred between

Boyd and Harbin when she took his drink away, they tussled, he struck her arm and sat in a chair, refusing her demand to leave. Menzie was present during this interaction. But nothing indicates that the situation caused him to experience anger, rage, resentment, or terror, nor that it rendered him incapable of cool reflection. The fight between Harbin and Boyd had nothing to do with Menzie, and there is no evidence showing that Menzie would have been so emotionally invested in what was happening that he was blinded by those emotions.

[13] Instead, Menzie suddenly—and, presumably, calmly, given that Boyd had no warning that he was about to act—shot Harbin multiple times. Menzie calmly told Boyd not to say his name and then left the house. Nothing in the record would support a reasonable inference that Menzie acted in sudden heat—in other words, there is no serious evidentiary dispute on the matter. Therefore, the trial court did not err by refusing to give a jury instruction on voluntary manslaughter.

[14] The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.